275 So.2d 894 (1973)
LOUISIANA POWER & LIGHT COMPANY, INC.
v.
HENDEE HOMES, INC.
No. 5178.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1973.
Rehearing Denied May 1, 1973.
*896 Monroe & Lemann, Andrew P. Carter, Melvin I. Schwartzman, H. Sloan McCloskey, Eugene G. Taggart, New Orleans, for plaintiff-appellant.
John T. Keys, Jr., Metairie, Michael H. Rasch, New Orleans, for defendant-appellee.
Before REGAN, BOUTALL and BAILES, JJ.
BAILES, Judge.
Plaintiff brought this suit to expropriate a right of way for the erection of electric power transmission lines to be integrated into its distribution system.
Consolidated for purpose of trial in the district court were the companion suits of Louisiana Power & Light Company v. Churchill Farms, Inc., 275 So.2d 903, and Louisiana Power & Light Company v. Albert B. Crutcher, et al., 275 So.2d 903 both on the docket of this court. The cases were consolidated for hearing in this court, and issues germane to all three of the cases will be discussed and passed on in this decision, however separate judgments will be rendered.
The record before us does not contain any reasons for the judgments rendered by the trial court, however the judgments do award the plaintiff the servitude sought against each defendant for a common award as it relates to the affected property of each defendant-owner.
All parties agree that the trial judge stated orally in conference with all attorneys present that judgment would be rendered on this basis, viz:
(a) Land within the Lake Cataouatche Protection Levee district: $8,100 per acre for the acreage inside the subject right of way, on the basis of $6,000 per acre fee value, plus $3,000 per acre severance damages, or a total of $9,000 per acre, less 10% or $900 per acre for value retained by the landowners.
(b) Land not within the Lake Cataouatche Protection Levee district: $2,700 per acre for the acreage inside the subject right of way, on the basis of the District Court using the figures of $3,000 per acre fee value, less 10% or $300 per acre value retained by the landowners.
The plaintiff appealed devolutively in all three cases after depositing in the registry of the court the amount awarded the owners, all as provided in LSA-R.S. 19:13.
The appellant, in seeking amendment to the judgments of the district court, makes an assignment of three errors:

"ASSIGNMENT OF ERRORS
"The District Court's judgments are contrary to the law and the evidence and manifestly erroneous, and the District Court erred by:
"1. Awarding values for the right of way being expropriated that are grossly in excess of the fair market prices as shown by sales of properties located in the vicinity of, and comparable to, the properties of the defendants.
"2. Awarding for severance damages, in addition to the Court's excessive value for the right of way, the amount of $3,000 per acre for the area or acreage inside the right of *897 way being expropriated across the land inside the Lake Cataouatche Protection Levee district.
"3. Failing to consider, in the Court's determination of value and damages, that the right of way being expropriated overlaps the pre-existing right of way for Texaco's highpressure natural gas transmission pipeline."
None of the defendants appealed the judgments rendered in their respective cases, however, defendants, Albert B. Crutcher, Jr., and S. Gordon Reese, did answer the appeal seeking an increase in quantum, and Churchill Farms, Inc., also answered the appeal, contending that the monetary award should be increased to $1,058,824.45 and that the width of the right of way be reduced to 75 feet. In its brief, Churchill Farms, Inc., limits its sought for increase to a deletion of the 10% value the district court found the owner retained in the property affected by the right of way and that the width of the right of way be limited to no more than 100 feet.
The contention of Churchill for a reduction of width of the right of way to 100 feet is not an issue before this court for the reason Churchill did not comply with the provisions of LSA-R.S. 19:6 and 19:7, which provides:
R.S. 19:6:
"The defendant shall file an answer within fifteen days after service of the notice of the time fixed for the trial. The answer shall be served personally or by mail on either the plaintiff or his attorney of record in the suit."
and
R.S. 19:7:
"Failure of the defendant in any such suit to file his answer timely or to serve a copy thereof on the plaintiff timely constitutes a waiver by the defendant of all defenses to the suit except claims for money as compensation for the property sought to be expropriated and claims for money as damages to other property."
In Churchill the trial court fixed the case for trial on April 12 and 13, 1971 and this notice was served on Churchill on February 26, 1971. The original answer was filed by Churchill on March 10, 1971. Therein no special defense of excessive right of way width of 150 feet was raised. The record shows that a first supplemental and amended answer was filed on March 24, 1971, in which no such special defense was raised. This special defense was first raised in a second supplemental and amended answer filed June 25, 1971.
We hold that this special defense was not timely raised and will not be considered herein. Under the plain provisions of R.S. 19:7, supra, in the absence of this special defense being timely raised, the issue before us pertains only to the determination of what the plaintiff shall pay for the right of way or servitude and any damages resulting from the taking. See Board of Commissioners of Port of New Orleans v. Lomm, La.App., 220 So.2d 489 (1969).
We believe it sufficient to describe the defendants' properties affected by the sought for rights of way as being land situated in the Parish of Jefferson lying south of the Westbank Expressway and North of Lake Cataouatche with the Churchill property being west of and contiguous to a southerly extension of Louisiana Avenue in Westwego, Louisiana, the Hendee Homes property being contiguous to and east of such extension of Louisiana Avenue. Only the property of Crutcher and Reese has a frontage on the south side of Westbank Expressway. The Churchill property is a large tract containing in excess of 4000 acres; the Hendee Homes property containing about 630 acres, and the Crutcher-Reese property containing about 150 acres. A part of the east boundary of Churchill is common to the west boundary of Hendee Homes and a part of the boundary of Churchill is common to a *898 part of the south boundary to the Crutcher-Reese property.
The servitudes sought from Churchill encompasses two separate parcels, one being 27.981 acres, and the other containing.7883 acres; that sought from Hendee Homes contains 3.9146 acres; and that sought from Crutcher and Reese contains.884 acres.
The proposed right of way begins at the south end of the plaintiff's power line corridor running south from the Nine-Mile Point generating station on the west bank of the Mississippi River. The point of beginning is called Churchill Junction. Commencing at this point, the subject right of way extends southerly towards Lake Cataouatche over the southwest corner of property of Crutcher and Reese a distance of about 400 feet and across a part of an existing drainage canal of Jefferson Parish Drainage District No. 1. From the point of exit of the Crutcher and Reese property, it enters the property of Churchill where it continues in a southerly direction, paralleling and overlapping the existing 24 inch Texaco high-pressure natural gas transmission pipeline. The subject right of way continues along this course for approximately 7000 feet at which point it turns and continues in an easterly direction for a short distance to the boundary of Hendee Homes where it continues for 1138 feet, 550 feet of which distance is within the preexisting right of way of the Lake Cataouatche Protection Levee. After leaving the Hendee Homes property it eventually crosses another portion of the Churchill property. From this point, 325 feet to the south it terminates, for the purposes herein discussed, at the switching station of the plaintiff.
For the condemned rights of way the district court made the following awards on the basis set forth supra:

Hendee Homes, Inc. $ 19,866.14;
Churchill Farms, Inc. $228,774.51; and
Crutcher and Reese $ 7,302.15.

To prove the value of the right of way, the plaintiff introduced the testimony of two appraisers whom the court accepted as experts, being Mr. Peter J. Talluto and Mr. Max J. Derbes, Sr. Both of these witnesses testified that they became thoroughly familiar with the property and its salient qualities and characteristics.
Mr. Talluto testified that he classified the Churchill and Hendee Homes property as open marsh, some dry, some wet and other parts under water. He found the Crutcher-Reese property was higher ground. He approached his determination of value by use of market data, that is, by the use of sales of comparable property. He investigated a total of twelve different sales. He concluded that the highest and best use of the subject properties was speculative, because, in his opinion its present use is restricted to hunting, trapping and fishing.
After making his study of the property as it related to the previous sales he investigated, Mr. Talluto concluded that the property inside the protection levee had a fee simple value of $2,500 per acre, and the property outside the levee had a value of $500 per acre.
Mr. Talluto was of the opinion that the compensation due the owners for the right of way across their respective properties was seventy-five (75%) per cent of the property as valued by him, which he has computed to be:
Hendee Homes, Inc., $4,356.98 for 3.9146 acres, of which 1.8939 acres has a value of $300 per acre, and 2.0207 acres has a value of $1875 per acre.
Churchill Farms, Inc., $52,700.37 for.7883 acres outside protection levee at $300 and 27.981 acres inside the protection levee at $1875; and
Crutcher and Reese, .884 acres at $1875=$1657.50.
Mr. Max J. Derbes, Sr., testified that both Churchill and Hendee Homes property was wet marshland; that it was dry when he was on the property because of the drought prevalent at that time. He *899 found the highest and best use of the property in the foreseeable future would be hunting and mineral exploration, and possibly trapping.
He stated he used the market date approach to value and that he used most of the same sales that Mr. Talluto used, plus three other sales. In his opinion the right of way took sixty-five (65%) per cent of the fee value of the Crutcher-Reese property, fifty (50%) per cent of the fee value of the Churchill Farms, Inc., property; and of the Hendee Homes, Inc., property the right of way took seventy-five (75%) per cent of 2.1928 acres outside the levee and canals and fifty (50%) per cent of 1.721 acres within levees and canals.
His opinion, of the Crutcher-Reese property was that .5926 acres had a value of $2,000 per acre, or $1185, and .2914 acres had a value of $500 per acre, or $146. He considered the right of way took sixty-five (65%) per cent of its value, thus computing the total value of the taking to be $889.
He testified that the Churchill property from which 27.981 acres was taken inside the protection levee had a value of $1000 per acre, and .7883 acres outside the protection levee had a value of $200 per acre. He attributed fifty (50%) per cent of the fee value to the value of the right of way. He determined thusly that the value of the taking of this property was $14,070.
In calculating the value of the right of way taking on the Hendee Homes property he considered 2.1928 acres was worth $3000 per acre, or $6579, and 1.721 acres had a value of $750 per acre, or $1291. Of the 2.1928 above, he figured the value of the right of way was seventy-five (75%) per cent of the fee value, and of the 1.721 acres above, the right of way had a value of fifty (50%) per cent of the fee. Under these calculations, the right of way had a total value of $5,580.
Neither Mr. Talluto nor Mr. Derbes found any severance damages to the various remaining ownerships. Also, neither of these experts could assign any material or beneficial use which the owners could make of the residual ownership of the areas encompassed within the respective rights of way.
For the value of the properties owned by the defendants, Crutcher and Reese offered the testimony of Mr. John M. Parker, III, Churchill, the testimony of Mr. J. Folse Roy and Mr. Omer F. Kuebel, and Hendee Homes, Inc., called Mr. Charles Deano. Each of the witnesses were accepted as experts, however, we note that Mr. J. Folse Roy admitted he was a stockholder in and an Executive Vice President of Churchill Farms, Inc., and owned a substantial interest in the company. This involvement with Churchill does not disqualify him as an expert witness, but it does affect the weight of his testimony. We find it is not necessary to rely on his testimony for the conclusion reached herein.
Crutcher-Reese:
Mr. John M. Parker, III, a real estate broker engaged in appraisal work for 20 years used the market data approach to reaching a conclusion of value of the Crutcher and Reese property. He found the subject property was available for development as a single unit. He testified that the land was at approximate sea level, dry, was growing rye grass and approximately sixty (60%) per cent was cleared of timber. He stated he had been on the property many times, and accordingly, had a good working knowledge of the property. In his determination of value, he made a study of five separate tracts of land. The highest and best use of the property was for development of residential subdivision.
It was his opinion that the fair market value of the land was $7000 per acre.
Mr. Parker found four separate parcels of land involved in the right of way or arising from the taking. We will be concerned at this time only with Parcels *900 No. 2 and No. 3. Parcel No. 2 contains.609 acres and Parcel No. 3 contains .275 acres. These have a combined area of .884 acres. Mr. Parker found, and we believe reasonably so, that there was no residual value in the area to the owner. We find a total taking. The fair market value being $7000, this area is worth $6188.
Churchill Farms:
Mr. Omer F. Kuebel, a realtor and appraiser with 35 years experience, testified that he took a helicopter trip with Mr. Roy over the Churchill property along with an aerial inspection of the surrounding properties for the purpose of making a determination of what the highest and best use should be of the property covered by the right of way and also to determine the present value of this property.
On this helicopter trip he made several on-the-ground inspections to see what the ground condition was at trial date which was about thirty days hence. He learned that the Hendee Homes property to the east was ready for development and that it was in fact being developed. He found the land within the protection levee was drying out and that the physical condition would permit a development of the land for multipurposes within a reasonable future of a year or two years. He found that access to this area would be available within a reasonable time. This conclusion was based on the information made available to him from the Zoning and Planning Director of Jefferson Parish and from the bank which was furnishing financing to Hendee Homes. Mr. Kuebel had the benefit of a survey of the Churchill property, a survey of the right of way and a statement of the conditions of acquisition, including the type of towers and steel poles most likely to be used in construction of the line.
He testified he examined the Texaco 24 inch gas pipeline right of way agreement, noting the conditions of this agreement.
In his investigation and appraisal, he testified he confined his research to an area of 1261.0209 acres which was in his opinion affected by the right of way and as the area to be included in any immediate development of the property.
In reaching a value of the property he used the market data approach. He investigated thirteen sales which in his opinion were comparable to the Churchill property, some of which were also selected by other expert witnesses as being comparables.
Of the 1261.0209 acres appraised, Mr. Kuebel assigned a value of $5500 per acre. He found the value of the land, after taking out the land included in the right of way, had a value of $5420.37 per acre for 1232.2516 acres.
The total before taking value was $6,935, 614.95.
The after taking value was $6,679,259.60 which results in land taken and damages value at $256,355.35 which was rounded out at $256,350.
The break down of this computation is explained by the witness as follows:

Parcel one consisting of
27.981 acres × $5500 per acre = $153,895.50
Parcel two consisting of
 .7883 acres × $1000 per acre = $ 788.30
 ___________
Total value of land taken $154,683.80

The balance of Mr. Kuebel's explanation of values relates to Churchill's claim for severance damages to be discussed below.
Hendee Homes:
Mr. Charles Deano, the expert appraiser offered by Hendee Homes, testified he had been engaged in this type of work for the past twelve years. He, too, fixed value by the market data approach and in doing so used six comparables which, in his opinion, established value from $6075 to $7500 per acre.
This witness concluded, on the basis of the six comparables he used in his study that there was a value present of $6000 per acre.
*901 The acreage of the right of way was 3.9146 of which amount, according to Mr. Derbes, 1.7218 acres of the right of way lies within the Lake Cataouatche levee right of way. Mr. Deano stated that in his opinion this fact did not diminish the value of the land.
We note that Mr. Talluto and Mr. Derbes each were of the opinion that the residual value in the 1.7218 was fifty (50%) per cent. Dr. Deano contending this area had a value of $6000 and that it was a total taking though he admitted on cross-examination that even before the right of way was sought by plaintiff this area was interdicted to all buildings by the owner. We find this 1.7218 acres had a value of no more than fifty (50%) per cent of the value found by Mr. Deano. We accept the per acre value finding of Mr. Deano of $6000 per acre, as it is more in keeping with the values found by Mr. Parker and Mr. Kuebel.
The following computation of value is found:

1.7218 acres
at $3000 per acre = $ 5,165.40
2.1928 acres
at $6000 per acre = $13,156.80
 __________
Total $18,322.20

We find the plaintiff's experts were not realistic in their approach to value of the land utilized in the area of the right of way. From a developmental standpoint we fail to find any residual value. The uses to which the remaining ownership can be put, as stated by plaintiff's experts has no residual monetary value.

SEVERANCE DAMAGES
Neither Mr. Talluto nor Mr. Derbes found any severance damages to the various remaining ownerships. Also, neither of these experts could assign any material or beneficial use which the owners could make of the residual ownership of the areas encompassed within the respective rights of way.
Crutcher-Reese:
We believe the severance damages found by Mr. Parker to Parcels No. 1 and No. 4 of the Crutcher and Reese property are justified and supported by his testimony which adequately explains the basis for his finding. Parcel No. 1 containing .055 acres was cut off from the remainder of the tract by the taking and in Mr. Parker's opinion, which appears reasonable to us, has no residual value to the owner. Parcel No. 4, somewhat larger than Parcel No. 1, by reason of its proximity to the right of way was diminished in value by fifty (50%) per cent. Therefore, Parcel No. 1, containing .055 acres and Parcel No. 4, containing 1.024 acres, being worth $7000 per acre, as stated supra, suffered a combined severance damage of $3584.
Churchill Farms:
It was Mr. Kuebel's opinion that there were severance damages amounting to ten (10%) per cent of the value of a 150 foot wide strip on each side of the right of way. The area of this strip would equal twice the acreage of the right of way or 55.9620 acres (witness erroneously stated this area comprised 54.6396 acres with a value of $30,051.78) with a severance damage fact of ten (10%) per cent or $550 per acre for a total of $30,779.10.
According to his view, because of the position of the power line and drain, in the southeast corner of the tract there is a small triangular shaped area containing five acres which would be adversely affected to the extent of fifteen (15%) per cent or $825 per acre for a severance damage of $4125.
Also this expert found damage for development purposes by reason of the requirement of fire lanes or streets at 1500 feet intervals across the right of way. This, according to his testimony, entails six crossings of 150 feet each or 900 feet with a cost (or damage) of $75 per linear foot or the sum of $67,500 as damages.
*902 Mr. Kuebel admitted that he did not take into account the affect of the high pressure natural gas transmission line as compared to the electric power transmission lines. He did not differentiate between the severance damages occasioned as opposed to each other. He was of the opinion there were damages of ten (10%) per cent for the presence of the electric lines. This he testified was based on conversations he had had with owners of property so located in other areas.
The basis for such a determination is too vague and indefinite to support an ward of severance damages.
The high pressure gas line preexisted the proposed construction of the electric lines.
There is no factual support in the evidence for an award of $4125 and $67,500 as severance damages as testified to by Mr. Kuebel. These calculations of damages are abstract and will not support an award.
Hendee Homes:
Mr. Deano found severance damages amounted to $19,950, the basis for which is his calculation of the cost to install streets and utilities consisting of sewerage, water and lighting, across the right of way. On cross-examination he stated that such costs are included in developmental costs attributable to the whole project.
It is acceptable for an expert appraiser, through the utilization of his expertise, to testify as to his conclusion of the highest and best use of the property provided it is substantiated by facts from which he reaches this conclusion, and through the application of an acceptable approach testify to the value of the property in such determined highest and best use; however it is fallacious for the expert to include therein what he determines as specific or extraordinary costs in the development of an imaginary, yet to be conceived or unplanned subdivision of the property.
In its raw undeveloped stage it well may be that the highest and best use of any given tract of land is, for example, residential subdivision. The expert appraiser may be within his expertise to testify to the value of the property for such reasonably foreseeable future use, but in this phase of such prospective transition, it is improper for the witness to testify or for the court to consider, as severance damages, the unusual, uncommon or extraordinary costs to be incurred in the subdivisional development of the property. Costs of this nature could affect the overall value of the property, but such are not leagl items of additional severance damages. Specifically herein, cost figures for fire lanes, special drainage works, cross streets are examples. As shown above Mr. Kuebel and Mr. Deano include in their respective estimates of severance damage costs for fire lanes, cross streets, and utilities. Such enhancement of severance damages must be rejected.
None of the expert witnesses arrived at a value of severance damages as fixed by the trial court, and the court did not assign written reasons for its award of $3,000 per acre of the land located within the subject right of way, therefore we have no means of learning the process by which such figure was concluded.
Severance damage is more properly calculated as diminution in value to the remaining property occasioned by the taking of the part expropriated. Specifically herein it is the reduction in value inflicted on the property on either side of the right of way, according to acceptable expert testimony.
We find the record before us does not sustain a fixing of severance damages of $3,000 per acre for the area inside the right of way, and accordingly, we must reject this finding of the trial court.
As was stated by our Supreme Court in Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260 (1956):
"Defendants must effectively show the market value of each tract immediately *903 before and immediately after the expropriation in order to establish the quantum of their severance damages."
The burden is on the defendant owner to show first the existence of damages, and if this is accomplished, then to prove the amount of damages.
Because both Churchill and Hendee Homes have failed to sustain their burden of proof, we reject their claims for severance damages.
For the reasons assigned above, the judgment appealed from is amended, and as amended, rendered in the amount of $18,322.20, together with legal interest thereon from date of judgment until paid and for all court cost.
Amended and rendered.