292 So.2d 183 (1974)
LOUISIANA POWER & LIGHT COMPANY, Plaintiff-Appellant-Respondent,
v.
CHURCHILL FARMS, INC., Defendant-Appellee-Relator.
No. 53600.
Supreme Court of Louisiana.
February 18, 1974.
Rehearings Denied March 22, 1974.
*184 Cecil M. Burglass, Jr., New Orleans, for defendant-applicant.
Andrew P. Carter, Melvin I. Schwartzman, Eugene G. Taggart, H. Sloan McCloskey, Monroe & Lemann, New Orleans, for plaintiff-respondent.
TATE, Justice.
Louisiana Power sues to expropriate a 150-foot-wide right of way 8000-odd-feet in length over Churchill Farms' property. The right of way is to be used to construct two sets of 230,000-volt electric transmission lines, with the 150-feet high steel and concrete towers in each spaced every 300 feet. Each set of towers, each containing two 230,000-volt lines, will parallel each other at a distance of 50 feet, each being 50 feet from an edge of the right of way.
The trial court awarded $228,774.51 for the land taken and for severance damages.[1] The court of appeal reduced this award to $154,634.80 for the land taken, disallowing any recovery at all for severance damages. 275 So.2d 903 (facts and reasoning set forth in companion case against Hendee Homes, Inc., 275 So. 2d 894 (La.App. 4th Cir. 1973.)[2] We denied Louisiana Power's application for certiorari, 279 So.2d 693 (La.1973), but granted Churchill Farms's application, 281 So.2d 734 (La.1973).
Therefore, for present purposes, we accept as final the intermediate court's determination that the value of the portion of the tract from which the 27.981-acre right of way was taken is $5,500 per acre, based upon its highest and best use for multipurpose development: residential, commercial, or industrial.[3] The issue before us solely is that principally raised by the Churchill Farms application granted by us: Whether the intermediate court erred in disallowing any severance or damages whatsoever to the portion of the tract from which the 27-acre right of way was taken?[4]
The Louisiana constitution provides that private property shall not be "taken or damaged" unless "just and adequate compensation is paid." La.Const. Art. I, Section 2 (1921). Thus, an owner is entitled *185 to any severance damages caused to the remainder of his property by a taking.[5]
The severance damages here sought are twofold in nature: (1) due to the proximity to the huge multi-volt tower systems, a strip of 150-feet width on each side of the right of way is alleged to have lost ten percent of its market value; (2) because of the bisection of the major high-value multi-purpose tract by the 150-foot wide right of way containing the huge tower systems, it is alleged that the sales price of the large parent tract for future development must be diminished by the cost of constructing at least six crossings over the right of way.
The court of appeal disallowed these damages as speculative and as based on evidence too vague and indefinite to support an award. State, Department of Highways v. Hub Realty Co., 239 La. 154, 118 So.2d 364, 369 (1960); Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491 (1959).
As to the (1) type of damages, we believe our intermediate brothers were clearly in error. The 10% loss in value of the adjacent strip is based upon the testimony of the defendant's expert realtor; he himself had arrived at this figure based upon his experience and upon his investigation with the owners of property so located in other areas. No substantial evidence opposes his conclusion. It receives factual support from the record by the contemplated presence of these huge highvoltage transmission systems across highly valuable property otherwise suitable for residential subdivision development. The depreciation in market value for such preferential best use is clearly compensable.
The plaintiff's landowners, it is true, had concluded there were no severance damages. This resulted primarily from their own evaluation of the property as primarily suitable for hunting, trapping, and fishing, with future development purely speculative.
To the contrary, both previous courts found the parent tract to have high value because of its relatively immediate susceptibility to residential, commercial, and industrial development. Thus, the argument of Louisiana Power in this court relies upon its evidence that the property is not presently suitable for multi-purpose development, but this is the very evidence which both previous courts rejected in arriving at their findings of the present high value of the parent tract.
The severance damages of the (1) type are adequately proved by a preponderance of the evidence. The informed and reasoned opinion of experts, corroborated by the facts in the record, may adequately prove a severance-damage loss, especially where accepted by the trier of fact. State, Department of Highways v. Hoyt, 284 So.2d 763 (La.Sup.Ct.1973); State, Department of Highways v. Garrick, 260 La. 340, 256 So.2d 111 (1972); State, Department of Highways v. DeRouen, 256 La. 947, 240 So.2d 717 (1970). The landowner is constitutionally entitled to recover damages proved to have been caused by the taking, and there is no artificial formula by which alone such damages must be proved, such as only by comparable sales. State, Department of Highways v. Crow, 286 So.2d 353 (La.Sup.Ct.1973); State, Department of Highways v. Blair, 285 So. 2d 212 (La.Sup.Ct.1973).
The valuation of the (1) type of damages, based on a 10% loss of value of a strip 150 feet wide along both sides of the *186 27.981 acre right of way (some 8,000 feet long), is shown to be $30,051.78. This is based on a 10% loss in value in the acreage immediately adjoining the electric transmission lines. Although Louisiana Power asserts that the expert did not take into consideration any loss due to an underground natural gas transmission line, the testimony of the defendant's expert shows that the ten per cent loss to which he testified was due solely to the presence of the unsightly, huge, high-powered electrical transmission lines. Tr. 1571-1572; cf., Tr. 1590.
The issue as to the (2) type of damages is a little more complex, although it is governed by the same principles.
The evidence shows that, in purchasing a large tract of land for development, a willing buyer would take into account and deduct from the net purchase price any costs he might have to incur for offsite improvements which would increase his own unit cost as to any lots or tracts sold from the parent tract. That is, in the present case, such a purchaser of the remainder of the parent tract would take into consideration in arriving at his price a circumstance that he would have to construct streets, sewerage, water, and drainage crossings at intervals along the 150-foot right of way bisecting the larger parent tract. The ultimate effect of this additional expense necessary to be made as offsite improvements is to increase the per-acre price of the property not encumbered by the right of way; of course, it is only the unencumbered property which the purchaser can use or re-sell for the purposes for which he purchased it.
Churchill Farms's experts testified to this effect. See, e. g., Tr. 1410-14. At least one of Louisiana Power's two experts likewise conceded that a prospective purchaser would take such cost into consideration in arriving at the net price he would pay for the remainder of the large tract. Tr. 792-98.
Thus, in a willing buyer-willing seller transaction, the cost of such crossings would diminish the purchase price offered to the extent of their cost, as compared with the price offered for a similar tract on which there was no such right of way requiring the expense of such crossings. Our jurisprudence recognizes this sort of a loss in value caused by the taking as recoverable severance damages. See: State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969); Gravity Drainage District No. 1 v. Key, 234 La. 201, 99 So.2d 82 (1958); State, Department of Highways v. Phillips, 180 So.2d 879 (La.App. 1st Cir. 1965), certiorari denied, 248 La. 907, 182 So.2d 661 (1965); State v. Williams, 131 So.2d 600 (La.App. 3d Cir. 1961). See also: Dakin and Klein, Eminent Domain in Louisiana, 78-82, 128-29 (1970); Comment, 19 La.L.Rev. 491, 495 (1959).
The evidence is uncontradicted that, if the 1000-acre northeast portion of Churchill Farms were developed as a residential subdivision, a minimum of six crossings will be required. Parish regulations require in residential areas a through street lane every 1500 feet for fire protection purposes when the property is developed. See, e. g., Tr. 1352-53. It is also uncontradicted that the cost of each such crossing will cost $75 per front foot for each crossing of the 150-foot servitude, or $67,500 in all.
Nevertheless, the evidence does not preponderantly prove that such consequential damages need result from the bisection of the Churchill Farms property by the Louisiana Power right of way. It merely shows that, if the northeast 1,000 acres of the 4000-acre Churchill Farms property is developed as a unit for residential subdivision purposes, such damages will necessarily result.
In reviewing the testimony of the Churchill Farms experts and of the parish planning officials, we find no evidence to show that the 1,000 acres must necessarily *187 be developed, for the best and highest use, so as to require crossings to be made at the developer's expense. For instance, we find no evidence to show that the some 200-acres cut off from the remainder of the 4000-acre tract by Louisiana Power's right of way could not be developed independently as a unit, industrial or otherwise, so as not to necessitate the expense of the crossings required for a residential subdivision.
We therefore find that the (2) type of severance damage claimed is not preponderantly proved by the evidence. However, as earlier noted, Churchill Farms is entitled to recover (for the (1) type of severance damage) the additional sum of $30,051.78.

Decree
For the foregoing reasons, we amend the award of the court of appeal so as to increase it by the sum of thirty thousand fifty-one and 78/100 ($30,051.78) dollars, awarded for severance damages, together with interest and costs. As thus amended, the court of appeal judgment is affirmed.
Court of Appeal judgment amended.

ON APPLICATIONS FOR REHEARING
PER CURIAM.
Both parties have filed application for rehearing. The plaintiff-respondent points out that inadvertently we awarded legal interest upon the award of severance damages. Our judgment will be amended so as to delete the award of legal interest, with the defendant-relator being reserved the right to ask for additional rehearing as to this narrow issue.
We have considered all other contentions in both applications for rehearing and find that they have been adequately disposed of by our original majority opinion.
For the reasons assigned, the award of legal interest in our original opinion is deleted; the defendant, Churchill Farms, Inc., is reserved the right to apply within the legal delay for additional rehearing as to this deletion. The applications for rehearing are otherwise denied.
Judgment amended to delete legal interest; applications otherwise denied.
NOTES
[1] This was calculated as follows: (a) for parcel one, 27.981 acres bisecting Churchill Farms's major acreage, within a protection levee, $8,100 per acre, being $6,000 per acre for fee value, plus severance damages to the remainder calculated at $3,000 per acre taken, less 10% residual value retained by the owner; (b) for parcel two, .7883 acres across a small tip at the lower (southeast) portion of the tract, outside the protection levee, $2,700 per acre for the land taken, with no severance damage, valued at $3,000 per acre less $300 per acre for value retained by the owner. (As to the (b) taking, neither the trial nor the appellate court found any severance damage, a holding we affirm without discussion).
[2] This was calculated as follows: First of all, no residual value to the landowners was found in the strips taken. The land in parcel one was valued at $5,500 per acre and that in parcel two at $1,000 per acre. No severance damages whatsoever were allowed.
[3] Our rejection of Louisiana Power's application, which questioned these findings of fair market value, has this effect. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
[4] The other specification of error is that the right of way should be reduced from 150 to 100 feet. This is not substantial, even if timely raised. The evidence fully supports the determination of the necessity of the full 150-foot width for the immediate and reasonably foreseeable needs of the taker. See also Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491, 493-494 (1959) (syllabus 1); Dakin and Klein, Eminent Domain in Louisiana, 27-9 (1970).
[5] The Louisiana courts commonly refer to all damages resulting from a partial taking as "severance" damages. Some writers use the term "consequential damages" to refer to damages of harms caused property by a taking, whether part of the property is taken or not, which flow as a consequence of the taking and which are not restricted to a loss in market value, for example, an expense incurred to adjust an estate to a taking. See: Dakin and Klein, Eminent Domain in Louisiana, 67-8 (1970); Tate, Legal Criteria of Damages & Benefits, 31 La.L.Rev. 431, 431 (footnote 1) (1971); Comment, ExpropriationConsequential Damages Under the Constitution, 19 La.L.Rev. 491 (1959).