JONES, Judge.
The State of Louisiana, Department of Highways, (hereafter, Department), expropriated a strip of land owned by Advance Enterprises, Inc. along U.S. Highway 167, known as the Jonesboro-Hodge Highway. The Department took 4,704 sq. ft., a srtip 9 to 11 feet in width along the front of the property of the 175,000 sq. ft. belonging to defendant. The property had been developed as a shopping center, the only one of its kind in the area.
The trial court awarded $2 per square foot for the property taken. In addition, the lower court found that, because of the loss of area that otherwise could have been used in the future for expansion of an inadequate parking area, the defendant suffered severance damages of $25,-000. The court also awarded a total of $12,785.79 for expert witness fees.
The Department appealed, alleging that the trial court erred (1) in finding that the subject tract had a value of $2 per square foot as commercial property at the time of the taking rather than a value of 800 per sq. ft.; (2) in awarding any severance damages; and (3) in awarding an excessive amount of expert witness fees.
VALUE OF THE PROPERTY TAKEN
The rectangular strip taken by the Department is on the west side of the major highway running through Jackson Parish. Of the total land area of about 175,000 sq. ft., approximately 54,939 sq. ft. is in building area.
Using comparables, the Department’s appraisers, Dan Carlock and L. J. Roy, valued the property at 800 and 950 per square foot, respectively. Both made a downward adjustment of the value of this tract with respect to the comparables, because of the size of defendant’s property. They made upward adjustments of their comparables for elapsed time since the transfer of those comparables.
*901 Also using comparable sales, but applying upward adjustment factors for such as location, time and utility, defendant’s four appraisers concluded the property was worth $1.50, $2, $2.50, $2.50 per square foot respectively.
The testimony of defendant’s appraisers indicated that the downward adjustment by the state’s appraisers because of the size of the subject tract was improper. The improvement of the entire tract and the attractiveness of the commercial area to a wider variety of people were cited as reasons for discounting the State’s appraisal methods. ,
Our review of all the evidence leads us to the conclusion that there was no abuse of discretion by the trial court in valuing the property taken at $2 per square foot.
SEVERANCE DAMAGES
The trial court awarded the sum of $25,000 as severance damages to the remainder for the reason that by virtue of the taking, the remainder was deprived of 4700 square feet of area which would have been available for use as parking area to service the existing building area on the remainder.
The record indicates that defendant’s shopping center was initially developed approximately 10 years prior to the taking, and consisted of a total area of 174,-972 sq. ft. The shopping center was located in the town of Hodge very near a large paper mill industrial complex in a Ward of Jackson Parish where the great majority of the people of that parish reside.
At the time immediately preceding the taking there was 54,939 square feet of building area in the center and approximately 120,033 square feet in the remaining portion of the center, all of which was hard-surfaced and used for parking, with the exception of 4,704 square feet which was involved in this taking.
Defendant’s four appraisers all expressed the opinion that all well-developed shopping centers, including defendant’s shopping center, need a ratio of three square feet of parking area to each one square foot of building area in order to provide ample parking during times of maximum use. They refer to these periods as peak periods.
The record reflects that the initial development of this center commenced in 1964 with it being developed at that time to the extent of 46,739 square feet of building area, leaving 128,133 square feet (including the 4,700 square feet involved in this taking) available for parking which meant that the shopping center was only short approximately 14% of the ideal available parking area of 140,217 square feet, or a ratio of three square feet of parking area to one square foot of building space.
Two of the most substantial tenants of the center were A & P Grocery and Beall’s Department Store. Both tenants found that their building area was inadequate for their business purposes, no doubt due to a very successful operation. Therefore, in 1973 defendant constructed an additional 5,000 square feet of building area for Beall’s above the 7,500 originally acquired, and constructed additional building area for A & P of 3,200 square feet above the 10,300 originally acquired. Following these additions the available area in the shopping center for parking, including the area involved in the taking, was approximately 36% deficient of the ideal 3 to 1 square foot ratio of parking area to building space.
Following the taking in this expropriation, the available area for parking space was diminished by an additional 4% resulting in a 40% deficiency in the ideal ratio of 3 square feet parking to each 1 square foot of building space.
The evidence reflects that the A & P Grocery in the center commenced its week *902 ly sales on Wednesday of each week, combining it with the double green stamp incentive, and that the paper mill complex in the area paid their employees on Thursday of each week. On these days at peak times the parking area would fill to capacity and it was often necessary to drive through the center several times and wait for someone to move before a potential customer could find a parking space. There was evidence that the failure of the center to develop the 4,700 sq. ft. involved in this taking, into a parking area available to its customers, was due to mismanagement. It is further apparent the undeveloped remainder of this shopping center which had an inadequate parking ratio would have at some point been developed to provide the additional 15 or 16 parking spaces available in the property had it not been removed from availability by expropriation. It is pointed out that the additional building area provided to Beall’s and A & P had occurred in 1973 and this taking occurred the following year.
It is further apparent that not only the lessees but the owners who had override provisions in at least two of their leases wherein they received as additional rent a certain per cent of the tenant’s gross income after it reached a certain volume (it was established that the volume of Morgan & Lindsay and Beall’s reached a point where they were paying rent under the override provision of their leases), could suffer loss of income due to the lack of available parking spaces during peak periods on Wednesday and Thursday of each week. The record further fully reflects that there was no additional area available to the shopping center for parking space expansion.
In the testimony of defendant’s four appraisers will be found their allowance of severance damages due to loss of available area for parking expansion because of the taking of 4,700 sq. ft. as follows:
(1)D. V. Willet, Sr. considered that there had been a loss of 4.3% of available area for parking space by virtue of the taking and correlated this percentage of loss of parking to severance damage by multiplying the percentage times his evaluation of the center in the amount of $750,-000 and concluded with severance damage of $32,250 which he adjusted downward $7,000 to cover his value of the property taken to $25,250 which he then further adjusted downward an additional $7,000 to cover cost of constructing parking area on the property taken, which construction costs he itemized as being $2,500 for excavation and construction of a retainer wall required because of a difference in the grade Of the existing parking area and the area taken, plus $4,500 for the paving.
(2) Hab Monsur arrived at severance damage to the remainder because of the fact that the taking deprived the remainder of 4% of the total available area for parking space by multiplying 4% times his evaluation of the shopping center after reducing same for depreciation of the improvements and making a further reduction for the value of the property taken which evaluation at this point amounted to $731,597, and when multiplied by 4% indicated a diminution in the value of the remainder in the amount of $29,263.90.
(3) O. L. Jordan computed severance damage to the remainder based upon loss of parking area by taking 5% of his depreciated value of the center’s improvements which amounted to $890,858, resulting in a severance damage figure for loss of parking area in the sum of $44,543.
(4) H. L. Bass computed severance damage to the remainder for the loss of parking area due to taking on 5% of his evaluation of the entire shopping center reduced by depreciation, and further reduced by his evaluation of the property taken, resulting in an evaluation after the taking of $1,299,146. Therefore, his severance damage for loss of parking was computed to be $64,369.33.
The two Department appraisers were of the opinion that the remainder suffered *903 no severance damages whatsoever as a result of the taking.
A review of the qualifications of the Department’s appraisers indicate that neither of them had the amount of experience possessed by defendant’s appraisers in connection with the development, management and evaluation of shopping centers.
The trial court cites State, Dept. of Hwys. v. Denham Springs Development Co., Inc., 307 So.2d 304 (La.1975) as authority for its award of severance damage herein to the remainder based on the loss of the available IS parking spaces. This case involves a shopping center located in the city of Denham Springs, Louisiana, which lost 42 parking spaces as a result of a highway improvement program requiring expropriation of a portion of the shopping center. The decision reflects that prior to expropriation there was available for additional development 8,322 sq. ft. of building area with sufficient undeveloped remainder being available to provide the additional building area with a parking ratio of 3 to 1. As a result of the taking, there was only available for additional building area 2,648 sq. ft. provided that the 3 to 1 ratio parking area to building area was to be maintained. Defendant’s appraisers testified that this ratio was essential to the proper conduct of a successful shopping operation. One of defendant’s appraisers considered the shopping center had a diminution of value due to the loss of 5,674 sq. ft. of available building area in the amount of 10% of its value (value being his appraised value of the shopping center before the taking reduced by his evaluation of that part taken) or $65,313. The other defendant appraiser concluded defendant would sustain a loss of income due to lack of availability of said area for construction of $89,480 in rent over a 10 year period which, when reduced to its present value by the trial court, amounted to'$64,220, which the Supreme Court pointed out was a figure comparable to that severance damage arrived at by the first defendant appraiser, and affirmed the trial court’s award of $64,220 as severance damages. The Supreme Court recognized the necessity of maintaining. the 3 t0 1 ratio in parking space t0 building area, and was convinced that de-feridant had adequately proven severance damages when he was deprived of the opportunity for a fully potential development of his shopping center due to the deprival of the parking area as a result of the taking. The court therein expressed the law to be as follows:
Severance damages are ordinarily calculated as the difference between the market value of the, remaining property immediately before and immediately after the taking. State, through Department of Highways v. Hoyt, 284 So.2d 763 (La.1973). The burden of proving alleged severance damages to the remainder of property involved in an expropriation proceeding rests upon the owner who must establish such damages with legal certainty by a preponderance of evidence. State, Department of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961); Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260 (1956); Central Louisiana Electric Company v. Dunbar, 183 So.2d 111 (La.App.1966). The informed and reasoned opinion of experts, corroborated by the facts in the record, may adequately prove a severance-damage loss especially where accepted by the trier of fact. Louisiana Power & Light Co. v. Churchill Farms, Inc., 292 So.2d 183 (La.1974); State, Department of Highways v. Hoyt, 284 So.2d 763 (La.1973); State, Department of Highways v. Garrick, 260 La. 340, 256 So.2d 111 (1972); State, Department of Highways v. DeRouen, 256 La. 947, 240 So.2d 717 (1970). Appropriately we stated in the Churchill Farms case that there is no artificial formula by which alone such damages must be proved.
Id. p. 307
*904 There is no difference between the diminution of value to a shopping center because of inability to develop same due to loss of available area to develop parking as in State, Department of Highways v. Denham Springs, supra, than the diminution of value to an over-developed center, as in the instant case, 'because in both cases the remainder has directly sustained damage due to taking.
Here, defendant’s shopping center has been over-developed, prior to the taking by the construction of building area to such an extent that the parking ratio was less than 2 square feet per 1 square foot of building area. One expert testified the ratio was 1.8 square feet available for parking to 1 square feet of building area. The taking in this case of 4% of the area in the center not developed to buildings, has in fact deprived defendant of the opportunity to improve its over-crowded parking situation by the addition of IS parking spaces.
The plaintiff relies heavily in its brief on the recent Supreme Court decision of State, Department of Highways v. Ross Continental Motor Lodge, Inc., 328 So.2d 883 (La.1976) wherein the court refused to award severance damage for defendant’s alleged loss of 8.1 parking spaces from his motel, cafe and lounge. This case is not applicable to the Advance Enterprises, Inc. case for the reason that the court in State, Department of Highways v. Ross, supra, found that there was no showing there would ever be a shortage of parking spaces at defendant’s place of business even assuming that the parking spaces had been reduced by 8.1 as a result of the taking, and for the further reason that the defendant in Ross had ample land available to the rear of his establishment for construction of additional parking spaces.
Our Supreme Court in the decision of Louisiana Power & Light Co. v. Churchill Farms, Inc., 292 So.2d 183 (La.1974) approved defendant’s experts’ determination of severance damage based upon 10% of the value of adjacent strips of property to the area taken for the purpose of constructing huge high voltage transmission systems across highly valuable property otherwise suitable for residential subdivision development. In approving the experts’ estimation of diminution of value to the remainder, the court recognized the law to be as follows:
The severance damages of the (1) type are adequately proved by a preponderance of the evidence. The informed and reasoned opinion of experts, corroborated by the facts in the record, may adequately prove a severance-damage loss, especially where accepted by the trier of fact. State, Department of Highways v. Hoyt, 284 So.2d 763 (La.Sup.Ct.1973); State, Department of Highways v. Garrick, 260 La. 340, 256 So. 111 (1972); State, Department of Highways v. DeRouen, 256 La. 947, 240 So.2d 717 (1970). The landowner is constitutionally entitled to recover damages proved to have been caused by the taking, and there is no artificial formula by which alone such damages must be proved, such as only by comparable sales. State, Department of Highways v. Crow, 286 So.2d 353 (La.Sup.Ct.1973); State, Department of Highways v. Blair, 285 So.2d 212 (La.Sup.Ct.1973). Id. p. 185.
The opinion of defendant’s experts as to severance damages to the remainder because of loss of available area for expansion of parking area based upon a percentage of their respective evaluations of the after taking value of the center, are well reasoned and further corroborated by facts in the record (successful shopping center, grossly inadequate parking ratio, no other available area for expansion, and crowded parking conditions at peak times). All have recognized that the loss of available area to add some additional 15 parking spaces has diminished the value of the remainder by various sums as set forth in a resume of their testimony on this point elsewhere in this opinion.
*905 There was an attempt by defendant to claim severance damage resulting from changes in traffic patterns of U.S. Highway 167 as a result of the Highway Improvement Program and also an attempt to claim severance damages, on the contention that as a result of the taking, there had been a technical breach of the mortgage contract providing financing for the shopping center that could be grounds for the'mortgagee’s invoking an acceleration clause. A review of the evidence reveals that there is insufficient proof of reduction of market value of the remaining property to support an award of severance damages on either of these grounds and the trial court did not give either of them any consideration in its reasons for judgment for the severance damage award therein.
The trial court, in concluding the remainder sustained damages of $25,000, failed to make any reduction for expense the owner would necessarily have incurred in constructing parking area on the part taken, which was as much as 10 feet above grade at some points from the existing parking area, and one of defendant’s witnesses testified that excavation and construction of a retainer wall would be necessary for development of this 4,700 sq. ft. into parking area, and expressed the opinion that the total cost would be $7,000 which would cover the expense of excavation, construction of retainer wall, and paving. We therefore reduce the award of the trial court for severance damages from $25,000 to $18,000 in order to make this adjustment for the cost of constructing the parking area.
We find that subject to the reduction set forth above, the trial judge’s findings of severance damages to the remainder for loss of the area which would have been available for development of additional parking, does not reflect an abuse of his discretion and we approve it.
EXPERT WITNESS FEES
The district court awarded expert witness fees as follows:
Lav elle Nunn $ 231.04
Darrel V. Willet, Sr. 3,725.00
Markley Huey 1,279.75
Hab Monsur 2,950.00
O. L. Jordan 2,200.00
H. L. Bass 2,400.00
Total.... $12,785.79
The Department contends the expert witness fees awarded are excessive.
Defendant argues the present case is different from the previous cases before this court in which we have consistently reduced awards for expert witnesses because the issues are more complex requiring more time and the experts more precisely described the services rendered and time involved. It is apparent from the record that a good portion of the time expended by these experts was devoted to the determination of severance damages, a substantial portion of which we have disallowed. Defendant’s experts are not entitled to compensation for this time.
Considering the evidence as to the services rendered by the expert witnesses, the value of the property taken, our refusal to consider a substantial portion of their severance damage determination, and the amounts allowed for expert witness fees in similar cases recently before this court, we disallow the fee for the photographer and fix the expert witness fees as follows:
Darrel V. Willet, Sr. $1,000
Markley Huey 500
Hab Monsur 1,000
O. L. Jordan 1,000
H. L. Bass 1,000
*906 DECREE
For the foregoing reasons, the judgment of the district court is amended to reduce the amount awarded defendant from $34,-408 to $27,408 and to fix the expert witness fees as set forth above. As amended, the judgment of the district court is affirmed.
Amended, and as amended, affirmed.