363 So.2d 228 (1978)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Lydia N. BOUGERE et al.
No. 8953.
Court of Appeal of Louisiana, Fourth Circuit.
September 12, 1978.
Writ Refused October 26, 1978.
*229 William W. Irwin, Jr., Jerry F. Davis, Johnie E. Branch, Jr., Bryan Miller, Baton Rouge, and Jesse S. Guillot, New Orleans, for plaintiff-appellant.
*230 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Herschel L. Abbott, Jr., New Orleans, for defendants-appellees.
Before LEMMON, SCHOTT and BEER, JJ.
LEMMON, Judge.
The State of Louisiana, through the Department of Highways, has appealed in this expropriation case from a judgment awarding defendants-landowners (1) the value of property taken for the construction of Interstate Highway 10, (2) the rental value of property required for a temporary construction servitude, and (3) severance damages. Defendants answered the appeal, seeking an increase in the awards and in expert fees.
Prior to the expropriation defendants' property was a 2,464-acre tract, roughly rectangular in shape (with several indentations), located (as shown on the attached map exhibit) in St. John the Baptist Parish north of U. S. Highway 61 (Airline Highway) and south of Lake Maurepas. The property was uninhabited, consisting generally of wet tree swamp land about one or two feet above sea level, and was accessible only by two canals and by two private roads (abandoned oil field roads, one shell and one dirt) which terminated south of I-10.
The Department expropriated 55.084 acres in full ownership and 179 acres for a temporary construction servitude parallel and adjacent to the north boundary of the highway. The east-west route of the highway cut the property approximately in half, leaving a remainder of 1,202 acres south of the highway and 1,207 acres on the north.
Value of the Parcel Taken
The date of the taking was December 17, 1969.
The Department's expert considered the property's highest and best use to be for timber, hunting and trapping, as well as holding for speculation. He appraised the value of the tract at $125.00 per acre on the basis of comparable sales adjusted to reflect differences in time, size, location and other factors. However, by restricting his analysis to large tracts, he considered only one comparable in the parish or the general area, and that parcel was much further away from present development.
Defendants' experts, on the other hand, placed substantial reliance on several sales of smaller tracts in the general area. The first was the sale of an 18-acre tract six years prior to the taking. The comparable was located to the east of the subject and about the same distance north of Airline Highway, was similar in topography, and was sold for $200.00 per acre with the seller reserving the timber rights (valued on the subject by stipulation at $42.00 per acre).
Another comparable sale was a 160-acre tract of inaccessible swamp land for $350.00 per acre in 1969, which was used for sales of "paper subdivision" lots. That comparable was much further from present development to the south than the subject, but was within two miles of the isolated north-south U. S. Highway 51 and significantly was adjacent to another tract which the purchaser had developed similarly. Two other comparables in the general area were negotiated sales in 1969 to the Department for I-10 construction, one with 20 acres at $200.00 per acre (plus damages) and one with 125 acres and some access to Highway 51 at $322.00 per acre.
Other comparables on the east bank, considered by all three appraisers, were informative as to values generally of landlocked tracts in swampy areas north of the Airline Highway and west of Lake Pontchartrain. However, the four comparables discussed above, like the subject, were closer to presently developed areas, a factor which bears substantially on attractiveness to the market. Moreover, the alleged comparables on the west bank of the Mississippi River, while also informative in some respects, were not significantly persuasive.
The trial court found that the only comparable considered by any of the experts which was truly comparable was the tract expropriated by the Department in the case of State, Department of Highways v. Guste, *231 319 So.2d 468 (La.App. 4th Cir. 1975). On the basis of the $250.00 per acre value judicially determined in that expropriation (20 months before the present taking), the trial court fixed the value in this case at $250.00 per acre.
The greatest evidentiary weight which can be accorded the judicial determination of value in the Guste case is the presumption that $250.00 per acre was the correct value of that tract. For the judgment in the Guste case to be used as a comparable for estimating the value of the subject property, there must be expert evidence of comparability of the two properties.
The sole factual testimony of defendants' expert was that the Guste property was 260 acres of treeless marsh about four miles east of the subject. While he "gave no weight to the decision of the Court", he opined without explanation that the Guste property was inferior because the subject "had greater utility for potential industrial use". He made no attempt to adjust the comparable value to that of the subject.
The Department's expert testified that the Guste tract is immediately adjacent to a drainage district and to a subdivided tract with streets and utilities. Furthermore, the maps in evidence show that the Guste tract is closer to higher land and present areas of development. However, the record shows the Guste tract had no trees, while the subject had a stipulated forestry value of $42.00 per acre. On the record, without reasonable adjustments by the experts, we cannot consider the value of the Guste tract as controlling in this case. However, on the basis of the overall record we hold that the sale of smaller tracts in the area, proximate in time and adjusted for other considerations (primarily size), as well as the unadjusted decision in the Guste case, support an estimated value of $250.00 per acre.
Value of Temporary Construction Servitude
The temporary construction servitude, acquired on December 17, 1969 and released to the owners on January 13, 1975, was used for muck disposal during construction. Using the method proposed by the Department's appraiser and approved by the trial judge, we calculate the rental value of 179 acres at the after taking value of $230.00 per acre[1] (179 × $230.00 7e $41,170.00) minus timber value ($41,170.00-$7,476.00 = $33,694.00) at 8% per year for 5.083 years ($33,694.00 × .08 × 5.083 = $13,701.00). To the rental value of $13,701.00 must be added the value of the destroyed timber, $7,476.00, making a total of $21,177.00 due for the temporary servitude.
Severance Damages
Defendants' demand for severance damages is principally based on the contention that the northern half of the property was cut off from all possibility of access from the areas to the south.
South of the property is development along the River Road and the Airline Highway. There is no development whatsoever and no highway or traffic arteries for many, many miles to the north of the property.
I-10 is a controlled access highway, with no entrances or exists in the area of the subject property. No new roads or waterways will be allowed to cross the highway, and the nearest point of crossing is at Laplace, about ten miles to the east.
Prior to the taking there were two private roads which were used for access to the property from Airline Highway. While these roads ended before reaching the present location of I-10, they provided a possible means of reaching any point on defendants' property, which was a contiguous single tract. Furthermore, there was a north-south drainage canal which permitted drainage and passage of small boats from Airline Highway all the way to Lake Maurepas. The expropriation eliminated *232 the possibility of using any of these means of access to reach the north half of the property.[2]
Obviously, the attractiveness of an undeveloped, landlocked tract of ground to a potential purchaser is enhanced considerably by the existence or the potential availability of some access road, even one across the property of others, or even by small boat access. Conversely, the psychological attractiveness (which of necessity bears upon market value) is diminished by loss of all possibility of access from the nearest area of present development.[3]
A land owner is constitutionally entitled to recover as damages the diminution in value caused by an expropriation to the remainder of his property. There is no single formula by which such damages must be proved, such as only by comparable sales. La. Power & Light Co. v. Churchill Farms, Inc., 292 So.2d 183 (La.1974). Moreover, the difficulty of measuring such damages does not justify the denial of any reasonable amount.
Basic reasoning and common sense dictate that the north half of defendants' property sustained some diminution in value as a result of the expropriation, which left that parcel surrounded by uninhabited swamp for many, many miles to the north, west and east, with no possibility of access to the relatively close area of development to the south. The gist of the testimony of defendants' experts was that after the taking a buyer would pay less per acre for the north half of the property than for the south half, not only because the south half was closer to high ground, existing development and traffic arteries, but also because the north half no longer had any possibility of access across the highway to the high ground, existing development and traffic arteries to the south.[4]
The amount of the diminution in value is very difficult to evaluate and must be left largely to the informed and reasoned opinion of those who have expertise in the field of estimating real estate values, supported by facts in the record. One of defendants' experts referred to sales of land comparable in remoteness and accessibility to the severed north half (although some of the sales occurred prior to the taking) and noted the lower sales prices. The appraisers, however, generally relied upon their judgment, and the trial judge tempered this judgment and set the severance damages at $20.00 per acre, representing the difference in the value immediately before the taking and the value after the taking. We find no abuse of discretion.
Interest
The trial court awarded interest from the date of the taking on the amounts awarded for the value of the property taken and of the temporary servitude, but awarded interest only from the date of judgment on the amount awarded for severance damages.
R.S. 48:455 provides:
"The judgment rendered therein shall include, as part of the just compensation awarded, legal interest on the amount finally awarded as of the date title vests in the plaintiff to the date of payment, but interest shall not be allowed on so much thereof as has been deposited in the registry of the court."
While arguably interest on severance damages, which are calculated as of the date of trial, might reasonably be held *233 to commence as of the date of trial, the statute clearly provides for interest from the date of the taking on the entire amount finally awarded for just compensation in excess of the amount deposited. The judgment must be amended accordingly.
Expert Fees
Defendants' two appraisers testified that their agreed fees were $2,500.00 and $2,000.00 respectively, plus $150.00 per day for court service. The trial court set the expert fee at $300.00 for each.
A witness who testifies as an expert at trial is entitled to compensation for his appearance in court and for his preparatory work, fixed with reference to the value of his services and the degree of skill required. The amount of his contractual fee with the litigant, while admissible, is not determinative of the fee to be awarded.
Here, the experts did not specifically itemize the amount of hours spent in preparation for trial. However, it is evident that they spent a considerable amount of time gathering and analyzing information for the initial appraisal and the updated appraisal, and they referred in their testimony to visits to the property and discussions with the parties to the comparables studied. Moreover, the award of the trial court (more than $60,000.00) when the deposit was less than $16,000.00, had to be influenced to some extent by the expert testimony.
The amount of expert fees is generally within the discretion of the trial court. The award in this case was reasonable for the days of testimony at trial and by deposition, but apparently did not compensate the experts for their preparatory work. The lack of evidence does not justify the total denial of compensation for preparatory work, and on the basis of the work evident in the record, we increase the expert fee of each appraiser by $1,000.00.
A forestry expert prepared a report on the value of the timber and the loss of forestry benefits. On the basis of this report the parties stipulated as to the value of the timber taken on the parcel expropriated and on the parcel used for muck disposal. Defendants' expert, therefore, did not testify, and the trial court did not award an expert fee.
An expert fee should be awarded to compensate an expert whose services form the basis of a stipulation of value at time of trial. This expert rendered a 1967 report, for which he charged $500.00, and then spent six days in 1975 in preparation the month before trial, for which he charged $150.00 per day, plus travel expenses of $184.24. His entire bill of $1,584.24 should have been awarded.
Decree
The judgment of the trial court is amended to decrease the compensation for the temporary servitude to $21,177.00, to award legal interest on the amount of severance damages from December 17, 1969 until paid, to increase the expert fees of Omer Kuebel and L. X. Lamulle by $1,000.00, and to set the expert fee of Keith Cranston at $1,584.24. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.
BEER, J., dissents and assigns reasons. [See following illustration] *234 
*235 BEER, Judge, dissenting.
I dissent for the reasons set forth in State of Louisiana, through the Department of Highways v. Lutcher and Moore Cypress Lumber Company, Ltd., 364 So.2d 134, Number 9044 on the docket of the Court of Appeal, Fourth Circuit, State of Louisiana.
NOTES
[1] Since the entire servitude is north of I-10, which had a lower value after the taking, it is appropriate to use the after taking value, as discussed later in the section on severance damages.
[2] There still remained water access from south of I-10 to the north half of the property by means of a canal which touched the southwest corner of the property, but this was a circuitous route 20 miles in length.
[3] The Department is correct in the observation that the north half of the property was not deprived of any existing means of access (except by small boat in proper seasons). However, the damage resulted from the loss of any possibility of public road access from a southerly direction.
[4] Indeed, the Department's expert lent credence to the basic reasoning of our approach when he adjusted a comparable upward by $20.00 per acre because the "subject property is nearer to the higher lands and nearer to traffic arteries".