BOUTALL, Judge,
concurring in part and dissenting in part.
I cannot agree with the results reached in the majority opinion and I delineate the reasons for my disagreement.
The first major issue is the evaluation of the property taken at $500.00 per acre. As I appreciate the testimony of the various appraisers, when you take away from the appraisal the valuation based upon the possibility of clay mining, the highest appraisal of the land per acre amounts to $150.00, and I cannot see that the testimony of any appraiser would justify the valuation of the property as it now stands. Nevertheless, even considering those appraisals, I think it somewhat persuasive to evaluate the cases which adjudicated property to the east of this property for the construction of this same I — 10 highway. I refer to the case of State, Department of Highways v. Lutcher and Moore, 364 So.2d 134 (La.App. 4th Cir.1978) involving another tract of land owned by these same defendants, and the case of State, Department of Highways v. Bougere, 363 So.2d 228 (La.App. 4th Cir.1978) which considered property between the two tracts. In each of these two cases, the court reached the conclusion that $250.00 per acre was an appropriate price for the taking.
However, I recognize that the evidence in one case may differ from the evidence in another case, not only as to the appraisals, but as to the location and best use of the land. The trial judge apparently recognized in this case a difference in the best use of at least a part of this land. While I see no difference as to that along the line of the property taken, there is room for a difference of opinion when one considers the entire tract of which this property is a part. The trial judge was apparently persuaded to his opinion because this tract in its southern most point did reach the Mississippi River. At the same time it is apparent from his reasons for judgment that he placed greater reliance upon the sale from Trosclair to Rittenberg than the amount stated by the appraisers themselves. I do not put such reliance upon that sale because I consider that the property is of such vast extent and varied usages that I am not persuaded that the sale of property along the Airline Highway can be equated with the property taken so far north. However, I feel I must accede to the findings of the trial judge because in this regard I would be merely substituting my opinion for his in violation of the rules of appellate consideration.
Accordingly, although I think the award of $500.00 per acre is overly generous, I *224 cannot say that the trial judge is manifestly erroneous, and I concur in his valuation.
As to the second major issue, I am of the opinion that the trial judge has erred in awarding severance damage for the property north of the right of way. I do not see in this record any factual evidence that would support the proposition that the value of the property north of the right of way is less after the taking than it was before the taking. While it may be that the owners of this property have ambitious plans for the development of the property in the future, I think that the record clearly shows that those proposed projects are speculative and are not compensable. There is no difference between the use of the land north of the highway prior to the taking as compared to after the taking, even as reflected in the testimony which took place a number of years after the actual taking. The property has its best use of timber and recreational pursuits, with income available pursuant to sales or rentals for campsites, hunting, fishing, trapping, etc. I agree with the trial judge’s finding that the land is unsuitable for clay mining.
The major issue as I see it is the accessibility of the north tract. It may be that in many tracts of land, the simple division of it into two parts with a limited access highway between will cause damages. But in our case, this is one large tract of cypress-tupelo swamp and the only access between the north and south sections at the time of the taking was by way of Blind River, by pirogue through the swamp, or by way of walking through the swamp in hip boots. Blind River is still there and the Department has made provisions for continued use of Blind River for navigational purposes [1] as well as leaving space for access roadways along the banks of the River for land passage. Additionally, an interchange was installed at the intersection of Louisiana Highway 641 just to the east of Blind River and that interchange permits a road access to the northern portion of the property immeasurably improving access, indeed providing an access never enjoyed before.
Accordingly, I dissent from that portion of the opinion which grants severance damages.

. Of course, the access to the northern portion from Lake Maurepas through Blind River and its tributaries is unaffected.