328 So.2d 883 (1976)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
ROSS CONTINENTAL MOTOR LODGE, INC.
No. 56784.
Supreme Court of Louisiana.
February 23, 1976.
Rehearing Denied March 26, 1976.
*884 S. Chris Smith, III, Jackson & Smith, Leesville, for defendant-applicant.
D. Ross Banister, William W. Irwin, Jr., Jerry F. Davis, Alva J. Jones, Johnie E. Branch, Jr., Baton Rouge, for plaintiff-respondent.
DENNIS, Justice.
This is an expropriation suit initiated by the Department of Highways under the quick-taking statute, La.R.S. 48:441 et seq. The property taken was a strip of land 300 feet long by five feet in depth across the front of defendant's motel property situated on U.S. Highway 171 in Leesville, Vernon Parish, Louisiana. The property was taken to widen the highway, and the Department deposited $5,097.00 in the Registry of the Court.
The trial court rendered judgment awarding defendant $36,088.95, including $1,500.00 as the value of the land taken, and $20,800.00 in severance damages. The judgment also awarded $3,107.03 and $3,365.61 in fees to two expert witnesses called by defendant.
Plaintiff appealed, complaining that the trial court erred in its award of severance damages and excessive fees to defendant's experts. The court of appeal reversed the trial court's severance damage award and reduced by one-half the expert witness fees. Upon application of defendant, we granted certiorari. 320 So.2d 206.
The physical characteristics of the property were correctly and succinctly described by the court of appeal:
"The motor lodge located on the parent tract contained 70 guest rooms, a swimming pool, a cocktail lounge, restaurant, meeting rooms and banquet facilities. Prior to the taking there were parking places for 99 automobiles on the property for the use of guests and employees of the motor lodge. Most of these parking spaces were located along the north and south sides of the property, near the entrances to guest rooms, but some parking spaces were located in the front of the building, that is, between the front of the motel and Highway 171.
"A concrete walk, about eight feet wide, ran along the front or east side of the building, parallel to the highway, and a concrete curb was located on or along the east edge of the property, at about the right-of-way line of the highway. Prior to the taking the width of the space between the above sidewalk and the curb on the highway right-of-way line was approximately 65 feet. As a result of the taking the width of that space was reduced to about 60 feet. By actual measurement, the distance between the east edge of the sidewalk and the right-of-way of the highway after the taking ranged from 59.91 to 60.25 feet. A part of that space was occupied by the covered entrance to the motel and by a large electric sign, but the balance of it was used as parking spaces for vehicles of guests and employees of the motor lodge and as a means for vehicles to get to and from the establishment.
"The parking area in front of the motel was marked and controlled so that ordinarily two rows of automobiles parked in that area. The cars in one row *885 parked side by side, adjacent and perpendicular to the sidewalk, facing west toward the motel, with the front bumpers of those vehicles extending over the edge of the sidewalk. The automobiles in the second row parked adjacent and at right angles to the curb on the east line of the parent tract, facing east toward the highway, with the front bumpers of those vehicles extending over the curb line. Prior to the taking there were spaces for 12 automobiles to be parked "straight in" on the second or last mentioned parking row. The parties agree that before the taking there was ample room for other vehicles to be driven or maneuvered between these two rows of parked cars."
Defendant contends that as a result of the taking the parking area between the front of the motel and the highway was reduced to the extent that defendant lost eight parking spaces, or 8.1 per cent of the total parking spaces. Because of the loss of these spaces, defendant argues the value of its remaining property has been reduced and that it has suffered severance damages.
The Highway Department offered the testimony of two experts in support of its position that the remainder suffered no severance damages. Defendant introduced the testimony of its experts, and the trial court, in awarding severance damages to the defendant, accepted the testimony of Mr. Will S. Holmes, one of defendant's appraisers.
In calculating his estimate of severance damages, Mr. Holmes primarily followed this procedure: first, he determined that the total net income for the year ending June 30, 1970 for the motel, restaurant and lounge was $108,000.00. By using what he called the "capitalization process" with a capitalization rate of 14% in a life span of twenty-five years, he reasoned that the motel had a value of $771,500.00 before the taking. Holmes did a study of the occupancy rate of the motel for each month of the year 1970 and determined that during four months of the year the occupancy rate of the motel was as follows: February, 77%; June, 90%; July, 92%; August, 90%. He concluded that during those four months of each year the reduction in the number of parking spaces would affect the income of the business establishment. He reasoned that the net income from all phases of the business during those four months should have been $35,964.00, or about one-third the average annual income, and he concluded that because of the loss of 8.1% of the parking spaces for the motor lodge, defendant would sustain a loss of 8.1% of its earnings from all phases of that enterprise during four months of each year after the taking, amounting to a loss of $2,913.08 per year thereafter. He found, therefore, that because of the loss of 8.1% of the parking facilities, the net income of the motel thereafter would be only $105,100.00 per year. Using the same "capitalization process" he reasoned that the value of the motel property after the taking was only $750,700.00, or $20,800.00 less than its value before the taking.
The factual issue of whether the defendant actually suffered a diminution in parking area was sharply contested by the parties. The court of appeal reversed the trial court's factual finding that the defendant had lost eight parking spaces by virtue of the taking. We pretermit discussion of whether the court of appeal committed manifest error in reversing the trial judge on the fact issue because its decision is supportable on another basis.
Severance damages are ordinarily calculated as the difference between the market value of the remaining property immediately before and immediately after the taking. State, Department of Highways v. Hoyt, 284 So.2d 763 (La. 1973). The burden of proving alleged severance damages to the remainder of property involved in an expropriation proceeding rests upon the owner who must establish such damages with legal certainty by a preponderance *886 of evidence. State, Department of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1962); Texas Pipeline Co. v. Barbe, 229 La. 191, 85 So.2d 260 (1956); Central La. Electric Co. v. Dunbar, 183 So.2d 111 (La.App. 1st Cir. 1966). The informed and reasoned opinion of experts, corroborated by the facts in the record, may adequately prove a severance damage loss, especially where accepted by the trier of facts. State, Department of Highways v. Denham Springs Development Co., 307 So.2d 304 (La.1975).
After a careful review of the record, we are convinced that the defendant failed to adequately prove severance damages because its expert testimony was not supported by the facts and therefore should be accorded no weight.
Generally, the market data approach is regarded as being the soundest method of determining whether severance damages have been suffered on account of an expropriation. Losses of rents or other revenues, or the cost to cure various physical damages caused by the taking may be relevant only as they indicate a diminution in value of the remainder, but can form the basis of an award only in unusual cases. State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969).
Insofar as we have determined, no decisions of this Court have allowed severance damages derived from the application of the income-capitalization method employed by Mr. Holmes in the instant case. It is conceivable, where the defendant has established actual loss of income due to expropriation, that this method may provide an adequate procedure for determining severance damages. However, Mr. Holmes' determination was based on anticipated rather than actual loss of income and was derived somewhat arbitrarily from the facts of the case.
It is unclear how Mr. Holmes arrived at his conclusion that there would be inadequate parking and therefore loss of income for the four months chosen. The only explanation offered was his assumption that during the four months named, the near capacity occupancy of the motel would cause a shortage of parking spaces for lounge and restaurant patrons. However, there was no showing of how many parking spaces were needed to serve the lounge and restaurant in addition to those used by the motel patrons, and it is questionable from the testimony that parking space would be needed by lounge and restaurant patrons at the same time during the day or on the same days of the week as the periods of greatest use by motel guests. Moreover, there was no factual basis to support the expert's determination that the business would lose 8.1% of its income during the four rush months because the taking had reduced the parking area by 8.1%. At the time of the trial it was disputed whether the defendant had in fact lost any parking spaces. There was testimony as to inconvenience experienced by some customers because of construction in the area, but it was not demonstrated that this inconvenience actually resulted in loss of income. Therefore, we conclude that the correlation between loss of parking area and loss of income, which Holmes ultimately converted to loss of market value of the property, was highly tenuous and speculative.
If the landowner elects to demand full compensation, including severance damages, prior to completion of the highway project, he must assume some of the risk or loss because of the speculative factors involved in an earlier determination of his severance damages. He nevertheless may have his demand for severance damages tried prior to completion of the project, and when he does the burden rests on him of proving to the degree of certainty required by law what his severance damages will be upon completion of the project. State, Department of Highways v. Black, 207 So.2d 583 (La.App. 3rd Cir. 1968). Damages are a matter of proof which must be borne by the landowner and establishment of the mere possibility of *887 severance damages is not a sufficient basis upon which to predicate an award. Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., 131 So.2d 369 (La.App. 1st Cir. 1961).
Defendant cites a recent decision of this Court, State, Department of Highways v. Denham Springs Development Co., Inc., 307 So.2d 304 (La. 1975), supra, in support of its argument that the severance damage award by the trial court was proper. In that case the trial judge accepted the opinion of defendant's expert that the property had suffered severance damages on account of loss of parking spaces which destroyed the potential for future development of the shopping center located on the property. The basis of the expert's opinion was that the otherwise certain prospect of expansion of the shopping center was impossible, given the generally recognized requirement of a three-to-one ratio of parking space to store space in shopping centers and the absence of any alternative space for expansion of the existing parking area. The expert for the developer calculated that the shopping center would have received a certain amount of rental income from the amount of building potential lost. By capitalizing the income, he estimated severance damages to the property.
The facts in the Denham Springs case are markedly different from those in the instant proceeding. Here there is no evidence that the parking ratio at the motel has been reduced below generally accepted standards. Nor was any attempt made to demonstrate severance damages by using comparable sales or rental values. In fact, one of the defendant's expert witnesses testified that the market value of the motel had actually increased during the year following the taking. Moreover, the present case is distinguishable from the Denham Springs case by the circumstance that here it was proven that the remaining tract contained ample area behind the motel where additional parking space could have been constructed.
A second issue with which we must deal is whether the court of appeal properly reduced the expert witness fees awarded below. The fees were calculated on the basis of the time and effort expended by the experts in making their appraisals. The trial court simply awarded them fees in accordance with the bills they submitted. It is apparent from the record that at least half of the time expended by these experts was devoted to the determination of severance damages which the court of appeal properly disallowed. Accordingly, we find no impropriety in the reduction of the fees based upon this record.
For the reasons assigned, the judgment of the court of appeal is affirmed.
SUMMERS, J., dissents.
TATE, J., dissents, being of the belief that severance damages were sustained and should be judicially fixed on the basis of the evidence.
CALOGERO, J., dissents. Some severance damages were sustained.