416 So.2d 571 (1982)
TRANSCONTINENTAL GAS PIPE LINE CORPORATION
v.
James F. TERRELL, Jr., et al.
No. 14839.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
Rehearing Denied July 13, 1982.
*572 R. Gordon Kean, Jr., Baton Rouge, and C. McVea Oliver, Monroe, for plaintiff-appellant Transcontinental Gas Pipe Line Corp.
J. Glenn Dupree, and Robert W. Scheffy, Jr., Baton Rouge, for defendants-appellees James F. Terrell, Jr., Ida Louise Miller Terrell, Alex Theriot, Jr., Loretta Durand Theriot, Gerald J. LeGleu, Constance Kleinpeter LeGleu, George H. Lambert, Mary Francis Lowe Lambert, Herschel C. Adcock and Frances Swayze Adcock.
*573 Before LEAR, CARTER and LANIER, JJ.
LANIER, Judge.
Transcontinental Gas Pipe Line Corporation (hereinafter referred to as Transco) instituted this suit to expropriate a servitude for a 12.75 inch high pressure gas pipeline across property owned by the defendants, James F. Terrell, Jr., Ida Louise Miller Terrell, Alex Theriot, Jr., Loretta Durand Theriot, Gerald J. LeGleu, Constance Kleinpeter LeGleu, George H. Lambert, Mary Francis Lowe Lambert, Herschel C. Adcock and Frances Swayze Adcock (hereinafter referred to as the Terrell group). In the first portion of a bifurcated trial, the trial judge ruled that Transco had the power to expropriate the servitude in question, that the pipeline project would serve a public and necessary purpose, and that the route selected for the servitude was proper. There has been no appeal from these rulings. At the second portion of the bifurcated trial, the issue of just compensation was litigated and the trial judge rendered judgments totaling $68,525.00 in favor of the Terrell group for the permanent servitude ($8,800.00), the temporary construction servitude ($925.00) and severance damages ($58,800.00). The trial court also awarded the Terrell group a $3,000.00 attorneys' fee and cast Transco for all costs, including the expert witness fees of the defendants' and the court's experts. Transco deposited the judgment award into the registry of the court and took this devolutive appeal asserting errors in the just compensation award.
The defendants are the owners of a tract of land containing approximately 600 acres located in Sections 61, 62 and 63, Township 4 South, Range 1 West in East Baton Rouge Parish, Louisiana. This property is bounded on the South by the Ligon Road and is bounded on the North by the Plains-Port Hudson Road (Louisiana Highway 3004). The Transco pipeline traverses the eastern side of the defendants' property from north to south over a distance of 2,353.7 feet. Plats of subdivision have been filed which establish a series of lots on the Ligon Road and some of these have been sold. Tentative plans have been made for establishing interior lots on the undeveloped portion of the property where the pipeline passes. Approximately 925 feet of the pipeline route traverses Lots 2-E and 2-F which front on Ligon Road and the balance of 1,428.7 feet crosses the interior undeveloped portion of the tract. Lots 2-E and 2-F each measure 253 feet front by approximately 1010 feet in depth and contain 5.87 acres. The permanent pipeline right-of-way is 30 feet wide. An additional 20 foot temporary construction servitude will be used on the west side of the permanent servitude.

I. VALUE OF SERVITUDES TAKEN
A. Value of Property. At the trial, testimony was received from four expert appraisers: two for the plaintiff (Chester A. Driggers and Julius A. Bahlinger, III), one for the defendants (Oren W. Russell), and one appointed by the court (Norbert F. Schexnayder, Jr.). All of the appraisers agreed that the lots on Ligon Road were more valuable per acre than the property situated in the interior of the tract and that the highest and best use for the entirety of this tract was future development into large lot single family residences. All of the appraisers further agreed that the market data approach using comparable sales was the proper method for determining true value and just compensation.
The per acre value assigned by the appraisers to Lots 2-E and 2-F on Ligon Road are as follows:

1. Schexnayder $7,500.00 per acre
2. Driggers $4,000.00 per acre
3. Bahlinger $5,500.00 per acre
4. Russell $7,500.00 per acre

The trial judge accepted the valuation of $7,500.00 per acre assigned by Schexnayder and Russell.
The valuations of the four appraisers for the property located in the interior of the tract are as follows:

*574
1. Schexnayder $4,500.00 per acre
 2. Driggers $3,000.00 per acre
 3. Bahlinger $2,500.00 per acre
 4. Russell $7,500.00 per acre

The trial judge accepted the valuation of $4,500.00 per acre assigned by Schexnayder.
Schexnayder's valuations were based on the escalation of property values in this area of East Baton Rouge Parish and 21 comparable sales. The record shows that the Schexnayder comparables were located in the general area of the property in question. Russell's appraisal supports Schexnayder for Lots 2-E and 2-F. Based on this evidence, the trial judge was not clearly wrong in these factual determinations. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The plaintiff argues that the opinions of Schexnayder should be rejected because he considered offers to purchase as well as actual sales in making his determination of fair market value. Offers to purchase, except offers by the expropriator, should not be considered in expropriation cases as evidence of fair market value because they are highly susceptible to fabrication. State v. McDuffie, 240 La. 378, 123 So.2d 93 (1960); Louisiana Gas Purchasing Corp. v. Sincox, 368 So.2d 816 (La.App. 2nd Cir. 1979); Central Louisiana Electric Company v. Gamburg, 200 So.2d 733 (La.App. 3rd Cir. 1967). Schexnayder's report shows that out of a total of 26 comparables considered that five were offers to sell rather than actual sales. Even if these offers are discounted, there are still 21 sales which were validly considered by Schexnayder in reaching his decision. Under these circumstances, since there is more than sufficient valid evidence of comparable sales upon which the opinion was based, any error involved is harmless and the trial judge could validly accept the opinion of Schexnayder.
Plaintiff complains that the trial court committed error by "Considering that property was a part of an established subdivision when the plan had been made six years ago but had not been filed, when there were no roads or utilities, when no lot had been sold, and when the developer testified that the plan was not final...." citing State, Dept. of Highways v. Terrace Land Co., Inc., 298 So.2d 859 (La.1974). Obviously, this refers to the valuation of the acreage on the interior of the tract. This claim is without merit. All four appraisers determined that this portion of the property had the highest and best use of future large acreage residential development. The defendants had a proposed plan for the development to the highest and best use as evidenced by Exhibit D-2. The appraisal was not made on a per lot basis but on an acreage basis. The lack of development of the interior portion of the tract caused it to be less valuable and that is why Schexnayder fixed a valuation of $4,500.00 per acre, an amount substantially lower than that assigned to the two front lots. Schexnayder's opinion was based on viable comparative sales of similar type properties and the ruling of the trial judge in accepting this opinion was not clearly wrong.
B. Value of Permanent Servitude. Schexnayder found that the pipeline servitude traversed Lots 2-E and 2-F for a total distance of 925 feet. Since the permanent servitude was to be 30 feet wide, a total of 27,750 square feet or 0.6371 acres was taken for this portion of the permanent servitude. The permanent servitude traverses 1,428.7 feet of the interior acreage and since it is 30 feet wide, occupies an area of 42,861 square feet or .9840 acres.
The plaintiff alleges error by the trial court in accepting the opinion of Schexnayder that the value of the permanent servitude was 95% of the value of the entire property. The other three appraisers, Driggers, Bahlinger and Russell, all fixed the value of the permanent servitude at 80% of the total value of the property. A review of the judgment in this matter shows that the defendants are authorized to use the property subject to the servitude for any purpose which will not unreasonably interfere with the rights of Transco, including, but not limited to, the right to cross the servitude with other pipelines or utilities, the right to grant other servitudes *575 or rights-of-way across Transco's servitude, the right to construct shallow drainage ditches not to exceed 24 inches in depth, the right to conduct agricultural operations of any character over the pipeline, including planting, cultivating, pasturing and harvesting of crops, and the right to maintain roads and fences. In view of this, it is our opinion that the trial judge was clearly wrong in fixing the value of the servitude at 95% of the value of the whole property. We reverse that portion of the ruling and fix the value of the servitude at 80% of the value of the whole property.
Thus, the value of the permanent servitude over Lots 2-E and 2-F is 0.6371 acres × $7,500.00 per acre × 80% or $3,822.60. The value of the permanent servitude over the interior acreage is 0.9840 acres × $4,500.00 per acre × 80% or $3,542.40. The total value of the 2,353.7 feet of the permanent 30 foot servitude over the property of the defendants is $7,365.00.
C. Value of Temporary Construction Servitude. The estimated time of construction on this project is one year. All of the appraisers agreed that the defendants would be entitled to rental for one year for the temporary construction servitude. Driggers and Bahlinger were of the opinion that a fair rental would be 20% of the values they assigned to the property or the sums of $745.00 and $805.00, respectively. Russell was of the opinion that a reasonable rental would be 10% of the value he assigned to the property or $812.00. Schexnayder was of the opinion that a fair rental would be 15% of value or $925.00. Schexnayder arrived at this figure by calculating the acreage in the temporary servitude in Lots 2-E and 2-F (0.4247) and in the interior acreage (0.6560) and multiplying these acreages by the valuations that he assigned to the property in those areas and then multiplying that figure by 15%. The trial judge accepted the opinion of Schexnayder and a review of the record indicates that, in so doing, he was not clearly wrong.

II. SEVERANCE DAMAGES
This court in State, Through Dept. of Highways v. Wilson, 372 So.2d 632 (La.App. 1st Cir. 1979) defined severance damages and the methods by which they may be calculated as follows:
"Severance damage is any depreciation in market value of the remainder of a landowner's property caused by the taking. Such damages are recoverable and are ordinarily calculated as the difference between the value value (sic) of the remaining property before and after the taking. State, Department of Highways v. Denham Springs Development Co., Inc., 307 So.2d 304 (La.1975). The burden of proving severance damages rests on the landowner, who must prove such damages with legal certainty by a preponderance of the evidence. State, Department of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961). However, there is no fixed or artificial formula by which such damages must be proved. Louisiana Power & Light Co. v. Churchill Farms, Inc., 292 So.2d 183 (La.1974). In fact, the informed and reasoned opinion of an expert, corroborated by the facts in the record, may be sufficient proof of a severance damage loss, especially where it is accepted by the trier of fact. State, Department of Highways v. Ross Continental Motor Lodge, Inc., 328 So.2d 883 (La. 1976); State, Department of Highways v. Denham Springs Development Co., Inc., supra, and cases cited therein.
"In expropriation proceedings, the trial court's factual findings as to severance damages and the evaluation of, and the weight given to, the testimony of expert witnesses will not be disturbed on review absent a showing of manifest error. State, Department of Highways v. Ruckstuhl, 348 So.2d 701, 704 (La.App. 1st Cir. 1977); See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978)."
See also State, Through Dept. of Highways v. Bitterwolf, 401 So.2d 380 (La.App. 1st Cir. 1981).
The location of a high pressure gas pipeline on a tract of land may have the effect of diminishing the market value of the property located in close proximity to it *576 because of the fear that prospective purchasers may have of the dangerous potentialities of such line. Louisiana Resources Company v. Langlinais, 383 So.2d 1356 (La. App. 3rd Cir. 1980) and the cases cited therein, and Louisiana Intrastate Gas Corp. v. McIntire, 349 So.2d 1331 (La.App. 1st Cir. 1977). In his report, Oren W. Russell did a study on the effect of a pipeline crossing the Tara Subdivision, Fifth Filing. Russell concluded from this study that residential lots crossed by a pipeline servitude were diminished in value and that the degree of loss of value depended on where the servitude crossed the property, with loss of value being greater when the crossing is in the front and less when the crossing is in the rear. In his report, Julius A. Bahlinger, III, observed that "it is well known that persons would prefer not to have a pipeline run through property. Lots with pipelines on them tend to sell a little later in the development because other lots are generally chosen by preference."
All four of the appraisers found that the property remaining after the expropriation would be diminished in value as a result of the pipeline servitude. In his report, Driggers estimated severance damages as loss in utility to the land. He found that the front two lots would lose the value of one acre or $4,000.00 and the interior acreage would lose one acre or $3,000.00 and that the sum of $6,000.00 would be required for a possible street extension of 60 feet at $100.00 a foot, for a total severance damage estimate of $13,000.00. Three of the four appraisers, Schexnayder, Bahlinger and Russell, were of the opinion that severance damages should be calculated on a percentage of reduction in value caused by the manner in which the pipeline crosses the two actual and four proposed lots. Schexnayder estimated that there would be a 47% loss in value to Lot 2-E because the pipeline cuts across the middle of the lot. He estimated that the loss in value of Lot 2-F would be 13% because the line only crosses at the northwest corner. He estimated the loss in value to the 30 acres which collectively comprise the four proposed lots in the interior of the tract at 25%. His total estimate of severance damages was $58,400.00. Bahlinger estimated an 11% loss in value to Lot 2-E, a 7½% loss in value to Lot 2-F, and estimated losses of value of 12%, 12%, 5% and 5% to four lots that he proposed for the development of the interior acreage to accommodate the servitude. His total estimate of severance damages was $9,065.00. Russell determined a 35% diminution in value to Lot 2-E, 20% to Lot 2-F, 35% to Lot 2-A-4, 20% to Lot 2-A-5, 20% to Lot 2-A-6, and 35% to Lot 2-A-7, for a total of severance damages of $81,994.00.
The trial judge accepted Russell's estimates of diminution in value for Lots 2-E and 2-F and the four proposed lots, but applied Schexnayder's property evaluations of $7,500.00 per acre for the front two lots and $4,500.00 per acre for the interior lots. In calculating the severance damages to Lots 2-E and 2-F, the trial judge used 5.82 as the acreage of each lot. Exhibits D-2 and D-4 show that each lot contains 5.87 acres. The trial judge did not subtract the value of the permanent servitude during his calculation of severance damage, but included the area taken for the permanent servitude in making this determination. The trial judge did not make a determination on the value of the total property before and after the taking which, although not essential, is, in our view, a better procedure. Accordingly, it is our opinion that the conclusion reached by the trial judge on severance damages is clearly wrong.
It is our opinion, after reviewing all of the testimony and the appraisal reports, that the procedure followed by Schexnayder is the correct one for calculating severance damages because it most closely follows applicable law. He estimated the percentage of diminution in value for the front lots individually and for the four proposed interior lots collectively.[1] He made an estimate *577 of the value of the total property before the taking ($821,500.00) and after the taking ($754,300.00) and from the difference between these two valuations ($67,200.00), he subtracted the value of the property taken as part of the permanent servitude ($8,800.00), for a severance damage estimate of $58,400.00. (Bahlinger also followed this method of calculation). His value for the worth of the permanent servitude must be adjusted because it was based on a 95% of value figure and this court has only approved 80%. Accordingly, from $67,200.00 we must subtract the sum of $7,365.00 (not $8,800.00), leaving the balance for severance damages of $59,835.00. This sum will be approved by this court for severance damages in this case.

III. CONCLUSION
The judgment of the trial court is amended to provide that just compensation for the taking of the permanent servitude is $7,365.00 and is further amended to provide that the severance damages in this case are $59,835.00. The award for the use of the temporary construction servitude is affirmed at $925.00.[2]
For the reasons assigned, the judgment of the trial court for just compensation is amended to reduce the total award in favor of the defendants to the sum of $68,125.00. The appellant is to pay all costs of this appeal.
AFFIRMED IN PART, AMENDED IN PART, AND RENDERED.
NOTES
[1] We believe that calculating the severance damages on the four proposed interior lots collectively as a 30 acre tract is a better practice because the area is undeveloped. See, for example, the procedures followed in the Langlinais and McIntire cases cited herein.
[2] There has been no appeal from the awards of costs, expert witness fees and attorney fees, and these portions of the trial court's judgment are now final.