437 So.2d 919 (1983)
Pearl KIEFFER, Administratrix of the Succession of John P. Kieffer, Deceased, Plaintiff-Appellant,
v.
SOUTHERN UNITED LIFE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 15522-CA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 1983.
Writ Denied November 28, 1983.
*920 Gahagan & Gahagan by Russell E. Gahagan, Natchitoches, for plaintiff-appellant.
Provosty, Sadler & deLaunay by David P. Spence, Alexandria, for defendant-appellee, Southern United Life Ins. Co.
Robert L. Kennedy, Thomas G. Wilson, Colfax, for defendant-appellee, Bank of Montgomery.
Before PRICE, MARVIN and SEXTON, JJ.
SEXTON, Judge.
Plaintiff sued for the benefits allegedly due under a credit life insurance policy. The trial court rejected her demands. We affirm.
Plaintiff in this cause is Pearl Kieffer, administratrix of the succession of John Kieffer. Mrs. Kieffer is the widow of John Kieffer, on whose life the credit life insurance policy was issued. Defendants are the Bank of Montgomery, Louisiana (hereinafter referred to as the Bank), and Southern United Life Insurance Company (hereinafter referred to as Southern), a foreign insurer licensed to do business in this state.
John Kieffer, a cattle rancher who resided in Winn Parish near Montgomery, Louisiana, had for several years prior to the commencement of this cause conducted business, as both a depositor and borrower, with the Bank of Montgomery. Mr. Kieffer's account was particularly attractive to the Bank because of the large amount of equityconstituted by land, cattle and equipmentwhich was available as collateral security on Mr. Kieffer's loans. The Bank, therefore, orally agreed, in return for Mr. Kieffer's account, to provide Mr. Kieffer with credit life insurance coverage to insure the amount of Mr. Kieffer's indebtedness to the Bank.
Starting in 1974, the Bank of Montgomery had continuously issued credit life insurance policies to cover the amount of Mr. Kieffer's indebtedness to the Bank. The Bank, as agent for Southern, would at six-month and occasionally one-month intervals, issue a credit life policy to cover the amount of Mr. Kieffer's indebtedness at the time the policy was issued. The amount of Mr. Kieffer's indebtedness to the Bank varied roughly from $10,000 to $60,000.
On February 10, 1981, the Bank issued Mr. Kieffer a credit life insurance policy for the amount of his then current debt to the Bank, $42,393.45. Mr. Kieffer was not at the Bank at the time the policy was issued, and did not fill out an application or sign his name on any form in connection with the issuance of the policy. The policy certificate itself was a triplicate form. The Bank retained one copy of the certificate itself, sent another to Southern at a later date, and attached a third and final copy of the certificate to Mr. Kieffer's promissory note to the Bank, which promissory note was kept in the Bank's file. No copy of the policy certificate was sent to Mr. and Mrs. Kieffer. The Bank debited Mr. Kieffer's account for the $423.94 premium, retained 60% of this amount as its fee or commission, and remitted the remainder of the premium to Southern's account at the Bank.
On March 9, 1981, Southern received its copy of the policy certificate from the Bank. On March 16, the Bank received an insurance application/health questionnaire from Southern with instructions to forward the form to the Kieffers for their prompt completion. The Kieffers completed the form and sent it to Southern shortly thereafter.
On March 25, 1981, pursuant to a medical report on John Kieffer compiled by Equifax, Inc. of Baton Rouge, Southern notified the Kieffers and the Bank that John Kieffer's credit life insurance was being terminated for health reasons. The Bank accordingly wrote the word "cancelled" over the Kieffers' copy of the policy certificate, which certificate had up to that time remained in the possession of the Bank and *921 had not been seen by the Kieffers. John Kieffer's account was credited for the amount of the premium. On April 19, 1981, John Kieffer died of terminal cancer.
On July 14, 1981, plaintiff sued Southern for the $42,393.45 allegedly due under the credit life insurance policy which had been issued by the Bank on February 10 and cancelled by Southern on March 25. Plaintiff subsequently joined the Bank as defendant. The Bank then made a third party demand upon Southern. In a judgment rendered November 16, 1982, the trial court rejected plaintiff's demands against both defendants. The Bank's third party demand against Southern was accordingly dismissed.

I.

THE LIABILITY OF SOUTHERN UNITED LIFE INSURANCE COMPANY
The first issue to be resolved in analyzing the insurer's liability involves the question of whether an insurance contract was perfected herein. The trial court indicated in its well written statement of reasons that no contract between the insurer, Southern, and the insured, John Kieffer, was ever confected. The trial court based this determination on two important factors. In the first instance, the certificate of insurance issued by Southern's agent, the Bank, expressly reserved Southern's right to decline coverage within thirty-one days of Southern's receipt of the completed certificate. Secondly, Southern timely exercised this right to decline coverage by notifying the Bank and the Kieffers on March 25, 1981 within thirty-one days of Southern's receipt of the certificate on March 9that Mr. Kieffer's coverage was officially rejected. In the view of the trial court, the insurer expressly reserved a right to decline coverage, and timely exercised this right within the contractually stipulated delay.
The trial court's determination that no contract of insurance was ever perfected is jurisprudentially supported. The Louisiana courts have often emphasized that an insurance certificate is not a binding contract, but merely an application for coverage, and the issuance of such a certificate is not tantamount to the perfection of a contract. Such an application constitutes merely a contractual offer, and the insurance contract is not completed until such application or offer is accepted by the insurerparticularly where the certificate (i.e., application) reserves the insurer's right to reject the applicant's coverage. See Duplissey v. Southern United Life Ins. Co., 385 So.2d 540 (La.App.3d Cir.1980), writ denied 392 So.2d 1067 (La.1980); Ryder v. Trisler, 367 So.2d 1257 (La.App.3d Cir.1979); Sanders v. Hartford Life Insurance Co., 350 So.2d 945 (La.App.2d Cir.1977), writ denied 351 So.2d 1208 (La.1977).
We agree with the trial court that Southern timely exercised its contractual right to cancel coverage. The master policy and the certificate issued in conjunction therewith contain the following provision:
"The company may require evidence of insurability satisfactory to it with respect to each debtor who is issued a certificate of insurance. If the company finds that an applicant is not an insurable risk according to its underwriting standards, it reserves the right to decline the insurance on the life by indicating its intention in writing to the creditor within thirty-one days from the time the individual certificate was received in the home office."
Such a provision in the policy, as relied on by Southern, is valid. Duplissey, supra. As we have previously recited, Southern determined to require evidence of insurability. Upon receipt thereof, it exercised its contractual right to timely decline coverage. Therefore, the insurance company was within its authority to cancel the policy within thirty-one days of receipt of the application, after its investigation revealed the poor health of Mr. Kieffer.
Furthermore, in completing the insurance application/health questionnaire, the Kieffers gave a negative reply to the three questions of whether John Kieffer had "ever had" cancer, an operation, or a serious illness. These negative responses *922 were all patently false since Mr. Kieffer had a seriously debilitating rectal malignancy and an operation to remove same prior to the completion of the health questionnaire.
The law is well settled that false statements in an application for insurance shall bar recovery upon the insurance contract where such statements materially affect the insurer's acceptance of the assumed risk, and the statements are made with the intent to deceive. LSA-R.S. 22:619(B); Topps v. Universal Life Insurance Co., 396 So.2d 394 (La.App. 1st Cir.1981).

II.

THE LIABILITY OF THE BANK OF MONTGOMERY (LOUISIANA)
In rejecting plaintiff's demands against the Bank, the trial court found:
"The Bank is not an insurer and did not agree to furnish credit life insurance on Kieffer. The Bank was obligated only to timely apply for coverage and keep the premiums paid. The Bank discharged the obligation."
Therefore, the trial court found that the Bank undertook the obligation to apply for the insurance on Mr. Kieffer's behalf in a timely fashion but that the Bank did not, and could not, guarantee that insurance would actually issue. This determination of the trial court, being supported by the record and not being clearly wrong, will not be disturbed by us on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
For the reasons stated, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.