LINDSAY, Judge.
The Town of Homer filed suit to expropriate 1.5 acres of the defendants’ eighteen-acre tract for the construction and enlargement of a wastewater treatment plant.
At trial, the defendants questioned the public necessity for the taking. Also at issue at trial was the highest and best use of the property, the value of the land sought to be expropriated and the question of whether severance damages should be awarded. At the conclusion of the trial, the trial court found that the taking was necessary and in the public interest and ordered the expropriation of the tract. The trial court also found the highest and best use of the property to be for pastureland and awarded $5,000 as its value. No severance damages were granted.
The issue of expropriation was not appealed, and that judgment is now final. However, the defendants have lodged this appeal complaining of the value set by the trial court for the expropriated tract and the trial court’s refusal to grant an award of severance damages. For the following reasons, we affirm.
BACKGROUND FACTS
In 1982, the Town of Homer was informed that its sewage treatment plant was not operating in compliance with the directives of the Environmental Protection Agency (EPA). After initially encountering difficulties in obtaining a federal grant from the EPA to subsidize part of the necessary construction of a new plant, a Baton Rouge engineering firm was approached by town officials. With its design for an innovative sewage treatment plant, a federal grant was finally secured. The plans called for construction of a new facility, after which the present one would be torn down.
In December, 1985, . Mr. Joe Michael, Mayor of the Town of Homer, became aware that additional land was needed for the project. As the defendants’ property was immediately adjacent to the present sewage treatment plant, the Mayor approached one of the tract owners, Lonzie D. Green, with an offer to purchase the 1.5 acres required for construction of the new plant for $3,000 per acre, or a total of $4,500. This offer was declined by Mr. Green. A subsequent offer of $5,000 from the Town’s Board of Selectmen was likewise refused. Mr. Green indicated that he would only accept an offer of approximately $13,000.
In July, 1986, the Board of Selectmen directed the Mayor to initiate expropriation proceedings because the Town had not been able to purchase the property. Pursuant to those instructions, suit was filed on August 26, 1986. In October, 1986, an administrative order from the EPA was received setting forth a time schedule for the project. The EPA directed that a final design report be submitted by December 31, 1986; that construction be begun by February 28, 1987; that construction be completed by December 31, 1987; and that full operation of the new facility be attained by March 1,1988. Failure to comply would result in the withdrawal of funds from the project by the EPA.
Trial was held on November 6, 1986. At trial, evidence was presented which showed the location of the land in question. A *525 schematic diagram showing the position of the tract at issue is attached to this opinion as an appendix. The record reveals that the present sewage treatment plant is located on about three acres in the northwestern corner of a 23-acre tract. The remaining 20.4 acres were purchased by Lonzie D. Green and his now deceased father, Tollus Lester Green, in 1973. The tract’s western boundary borders on East 5th Street, an asphalt road. The expropriated property, a rectangular-shaped 1.5 acre area, lies adjacent to and south of the plant in the northwestern corner. Fronting on East 5th Street for 156 feet, this parcel of land measures 418 feet in depth and 170 feet across its rear boundary.
Between 1976 and 1978, the Greens sold several one-half acre tracts. Most of these were located along the tract’s northern boundary, east of the sewage treatment plant. One of these tracts sold for $1,085. Each of the others sold for $100, “and other good and valuable consideration.” Another lot located along the eastern boundary of the Green tract sold for $1,500.
Two real estate appraisers testified on behalf of the Town of Homer, both of whom valued the land at $5,000 and found that its highest and best use was for pastureland. Another appraiser testified for the defendants. He appraised the land at $6,500, and found its highest and best use to be for residential development.
The defendants’ appraiser also testified that after the expropriation of the 1.5 acre tract, the remaining property would be de-valuated to the extent of twenty percent of its value because of the location of the new sewage treatment plant. Therefore, he concluded that severance damages of $14,-400 should be awarded. In addition, he testified that an eight-foot high cedar fence should be constructed around the new sewage treatment plant to shield it from view. The cost of this fence was estimated to be $9,996.
The trial court found that the expropriation of the property was necessary for the public interest. In his written opinion, the district court judge enumerated several reasons for his lack of confidence in the testimony of the defendants’ appraiser. Consequently, he accepted the value of the land as set by the plaintiff’s appraisers, and judgment was rendered awarding the defendants the sum of $5,000 for the land. This amount had previously been tendered to the defendants and deposited in the Registry of the Court by the Town of Homer. The final judgment cast the defendants with the payment of costs, including the fees of the Town’s expert witnesses which were fixed at $150 each.
ASSIGNMENTS OP ERROR
In seeking reversal or modification of the trial court judgment, the defendants rely upon the following assignments of error:
1. The trial court erred in accepting appraisals by experts for the Town of Homer which were not supported by logical reasons; and
2. The trial court erred in refusing to award severance damages where the defendant’s expert stated that an award of $24,396 would be proper and the experts for the Town were not able to offer any contrary opinion.
VALUE — APPRAISER’S ESTIMATES
In its written reasons for judgment, the trial court stated that it relied upon the testimony and appraisals of the two realtors testifying for the town of Homer, Mr. Toney Johnson and Mr. Arthur DeLoach. Based upon these appraisals the court set the value of the expropriated tract at $5,000.
A landowner is entitled to the market value of his or her expropriated land as “just compensation” for the taking. La. Const. Art. 1, § 4; LSA-R.S. 19:110. The market value is defined as the price agreed upon by a willing and informed buyer and seller under ordinary circumstances. Southwestern Electric Power Company v. Conger, 307 So.2d 380 (La.App. 2d Cir. 1975). The market value approach examines the worth of the land in light of the best and highest use to which it may reasonably be put in the near future by reason *526 of its location, topography, and adaptability. Town of Rayville v. Thomason, 404 So.2d 1290 (La. App. 2d Cir.1981); Southwestern Elect. Power Co. v. Scurlock, 485 So.2d 72 (La. App. 2d Cir.1986). Also considered are comparable sales of other property, with adjustments made to compensate for their relative good and bad features with regard to the expropriated property. Southwestern Electrical Power Company v. Scurlock, supra.
In applying these principles, we have reviewed the testimony and the reports of the appraisers. In making their appraisals and arriving at the value of the property, the Town’s appraisers, Mr. Johnson and Mr. DeLoach, found the highest and best use of the property to be for pastureland. Based upon comparable sales, they concluded that a fair value for the property was $5,000. The landowner’s appraiser, Mr. Robert B. Greer, used similar comparable sales but was of the opinion that the highest and best use of the property was for residential purposes. Based upon that determination, Mr. Greer felt that the value of the property should be based upon a square footage evaluation of ten cents per square foot.
The defendants contend that their appraisal was more logical than those offered by the Town and their appraisal should have been accepted by the trial court. They also contend that the Town’s appraisers did not have an adequate basis for their opinions.
The record reveals that the Town’s appraisers were familiar with the property and made personal observations thereof. These appraisers were knowledgeable of the area and the real estate prices prevailing in the community. Both appraisers were real estate agents and they had listed and sold property for clients in the past. Although the Town’s appraisers did not obtain the assessed valuation of the property from the tax assessor, it appears that the tax assessment bore no true relationship to the value of the property in this case and was not a factor in the value placed upon the property by any of the appraisers, including the defendants’ appraiser.
Both of the Town’s appraisers viewed the property, evaluated the neighborhood, and checked comparable sales. While the property was in a fair location and had good access, both appraisers found the property had little utility because of the present location of the sewage treatment plant, the same plant which had been on that tract prior to the purchase by the Greens. Mr. Johnson said that at this time he could not judge the aesthetics of the new plant, the design of which might or might not be attractive and neat. Mr. DeLoach also indicated in his report that the property appeared to be in a low lying area. Both concluded that the highest and best use of the property was for pastureland.
Mr. Greer, on the other hand, found the land’s highest and best use to be for residential purposes. He reached his value of the property by determining a per square foot price from comparable sales. He devalued the remaining acreage twenty percent because of the sewage plant.
The trial court enumerated several reasons for refusing to accept Mr. Greer’s testimony. Among them were his use of unsubstantiated assumptions; his failure to justify a twenty percent devaluation of the defendant’s remaining property, particularly in view of the existence of an already adjoining sewage treatment plant; and his evasiveness when questioned about his basis for a ten cent per square foot evaluation. In the trial judge’s opinion, his demeanor on cross-examination reflected uncertainty and a lack of confidence.
The defendants also contend that the comparables used by the Town’s appraisers in arriving at their valuation support a higher value of the expropriated property. Defendants arrive at this conclusion by placing a square footage value to the acreage contained in the comparable tracts used by plaintiff’s appraisers. This is a technique normally employed in valuing residential property. However, in this case, the plaintiff’s appraisers considered the highest and best use for this property to be pastureland. This opinion was accepted by the trial court.
*527 A trial judge is in a better position to determine the credibility of expert witnesses and the weight to be given to their differing opinions. He may accord whatever weight he deems appropriate to their testimony when making his factual determinations of the value of the expropriated property, and his findings of value will not be disturbed in the absence of manifest error. State, Department of Highways v. Wax, 295 So.2d 833 (La. App. 1st Cir.1974); State D. of Trans. & Dev. v. Estate of Clark, 432 So.2d 405 (La. App. 1st Cir. 1983); State, Through Dept. of Trans. v. Townsend, 473 So.2d 99 (La. App. 3rd Cir. 1985), writ denied, 477 So.2d 712 (La.1985).
We are unable to say the trial court was clearly wrong in accepting the value assigned by the Town’s appraisers. They utilized comparable sales while making adjustments for the tract’s lack of utility due to its location next to the already existing sewage treatment plant. While their testimony may have lacked perfect clarity on all points, the record shows that they used an acceptable method of calculation and adequately supports their conclusions.
SEVERANCE DAMAGES
The trial court did not award severance damages to the defendants. The defendants contend that this was error because the Town’s appraisers did not offer an opinion on the subject, while their appraiser offered a reasonable and uncontradicted assessment of those damages.
Severance damages are damages which flow from the partial expropriation of a tract of land. They may result from the separation of the remaining property from the expropriated land, or from aesthetic considerations such as excessive noise and unsightliness, if the value of the remaining property is reduced. They are calculated as the difference between the market value of the remaining property immediately before and immediately after the taking. State, Dept. of Hwys. v. Ross Continental Mot. L., Inc., 328 So.2d 883 (La.1976); United Gas Pipe Line Co. v. Becnel, 417 So.2d 1198 (La. App. 4th Cir.1982); Missouri Pacific R. Co. v. Nicholson, 460 So.2d 615 (La. App. 1st Cir.1984), writs denied, 462 So.2d 185, 186 (La.1985).
The landowner has the burden of proving severance damages with legal certainty by a preponderance of the evidence. If he elects to demand severance damages prior to completion of the project, he assumes some of the risk or loss due to the speculative factors involved in an early determination of the damages. However, the informed and reasoned opinion of experts, corroborated by the facts in the record, may adequately prove a severance damage loss, especially when accepted by the trier of fact. State, Dept, of Highways v. Ross Continental Mot. L., Inc., supra; State D. of Trans. & Dev. v. Estate of Clark, supra.
The trial court specifically rejected the opinion of the defendant’s expert who testified in favor of awarding severance damages. The court found Mr. Greer’s use of a twenty percent devaluation of the remainder of the property to be arbitrary and without support. Also found to be inexplicable was his devaluation of the property because a new sewage treatment plant was to be constructed on the site, even though a plant was already on the adjacent property and had been there before the 1973 purchase of the tract by the Greens. In the past, the location of the plant has not precluded the defendants from selling some small parcels of land in this tract (although the last sale was in 1978). In spite of the area’s rural nature, one of the purchasers has placed a mobile home on his land, another has built a small house. Although there will be a new plant on the site, there is no evidence in the record that it will be less attractive in appearance or more noxious in odor than the present one.
This court is unable to say that the trial court erred in refusing to accept Mr. Greer’s testimony as to severance damages. Credibility of witnesses is a determination best left to the trial court. More importantly, the evidence demonstrates that no severance damages are justified as there has been no change in the character of the adjoining property. After completion of the expansion project, the area will *528 be fundamentally the same as it was before the Greens’ 1973 purchase and before the present expropriation.
Mr. Greer also testified that in order to block the view of the plant an eight-foot cedar fence would be necessary. The fence could be built for $9,996. The Town’s plans call for surrounding the facility with a six-foot chain link fence, similar to that which surrounds the present plant. A cedar fence is not specifically required, particularly when there has been no showing that either a chain link or other type fence would be inadequate. The issue here is similar to that discussed above, i.e., what effect the new plant will have on defendant’s remaining property. There is no solid fence screening the present plant from view and there is no evidence that the new plant will require such a fence. Thus, we cannot say that the trial court erred in refusing to award the amount requested for the fence.
For the reasons assigned, the trial court judgment is affirmed at appellant’s cost.
AFFIRMED.
*529 [[Image here]]