550 So.2d 832 (1989)
Deborah BENTON, Plaintiff-Appellant,
v.
SHELTER MUTUAL INSURANCE COMPANY, Defendant-Appellee.
No. 20844-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
*833 Larry D. Jefferson, Monroe, for plaintiff-appellant.
Hudson, Potts & Bernstein by Charles Herold, III, Monroe, for defendant-appellee.
Before MARVIN, FRED W. JONES, Jr. and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff, Deborah Benton, appeals from a trial court judgment finding that the defendant, Shelter Mutual Insurance Company, was justified in voiding her automobile liability policy due to material misrepresentations which she made on the policy application. We affirm.

FACTS
In October, 1987, the plaintiff called the Gary Richardson Agency, a local agent of Shelter Mutual Insurance Company, seeking to secure automobile insurance. The plaintiff talked with an agency representative, Ms. Martha Alexander. Ms. Alexander asked the plaintiff whether she had been convicted of any moving traffic violations or had received a driver's license suspension within the preceding three years. The plaintiff responded that she had not.
On October 15, 1987, the plaintiff personally went to the Shelter Mutual office and, with, the assistance of Ms. Alexander, completed an insurance application. The plaintiff was once again questioned regarding whether she had been "fined or convicted (or forfeited bail or bond) for a moving traffic violation" or whether her driver's license had been suspended within the preceding three years. Questions on the application concerning her driving record were specifically covered with the plaintiff. Once again, the plaintiff stated that she had not been fined or convicted of any moving traffic violation, nor had her driver's license been suspended.
The insurance application, containing the questions about her driving record, was completed at the office and was signed by the plaintiff. The plaintiff paid a six month premium and was issued an insurance binder.
On October 19, 1987, the plaintiff was involved in an automobile accident. On October 20, 1987, she reported the accident to the local agency. Her official driving record was then checked and it was discovered that the plaintiff had two speeding tickets, one in 1985 and one in 1987, and her driver's license had been suspended for failure to provide proof of insurance on a vehicle which she owned.
*834 The main office of Shelter Mutual Insurance was then contacted. The main office also ran a check of the plaintiff's driving record. The company confirmed that plaintiff had been convicted of two moving violations and that her license had been suspended.
The defendant company found that the plaintiff had misrepresented her driving record on her insurance application. Therefore, on October 29, 1987, the company sent the plaintiff a letter stating that her insurance coverage was being voided due to these misrepresentations. Her premium payment was returned. The plaintiff received the letter on November 16, 1987.
Shelter claimed that, due to the plaintiff's misrepresentations regarding her driving record, her insurance coverage was void ab initio. Shelter refused to pay any claim connected with the plaintiff's accident and the plaintiff filed suit.
The plaintiff contended that she simply did not remember getting the two tickets. She also testified that she did not remember pleading guilty and paying the fines.
As for the suspended driver's license, she claimed she secured insurance on her automobile from an insurance agent who kept the premiums and did not obtain a policy from the insurance company. Her brother was stopped while driving the car and could not provide proof of insurance. The plaintiff was notified by the Department of Public Safety to furnish proof of insurance. She claimed she took her driver's license and her receipts for money orders for the insurance premiums to the local "revocation" office where an official looked at her documents and told her to leave.
The trial court failed to accept the plaintiff's explanation that all her traffic troubles had simply "slipped her mind." The court found that the plaintiff materially misrepresented the facts when applying for insurance. The court found that failing to disclose the two speeding violations which she received in 1985 would have made her ineligible for coverage with Shelter Mutual, although the policy could have been written by another Shelter affiliate, but at a higher premium. The court found that because of these materially false representations, it was not necessary to address the issue of the plaintiff's suspended driver's license. Judgment was rendered in favor of the defendant.
The plaintiff appealed, complaining that the trial court judgment was contrary to the law and the evidence. She reasserts her argument that she forgot about her tickets and suspended driver's license and therefore did not intend to deceive the defendant when she failed to provide accurate information on her application for insurance.

REQUIREMENTS FOR VOIDING AN INSURANCE CONTRACT
LSA-R.S. 22:619, dealing with misrepresentations, with the intent to deceive, in applying for insurance policies, provides in pertinent part:
[N]o oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.
LSA-R.S. 22:619 requires a showing of both a false statement materially affecting risk and an intent to deceive. Coleman v. Occidental Life Insurance Company of North Carolina, 418 So.2d 645 (La.1982).
An insurer can rescind a contract of insurance if the policy holder, either fraudulently or with the intent to deceive the insurer, makes misrepresentations in its application *835 that materially affect the insurer's risk. Viada v. Blue Cross of Louisiana, 524 So.2d 101 (La.App. 4th Cir.1988); Jamshidi v. Shelter Mutual Insurance Company, 471 So.2d 1141 (La.App. 3rd Cir. 1985); Keiffer v. Southern United Life Insurance Company, 437 So.2d 919 (La. App. 2d Cir.1983), writ denied 442 So.2d 456 (La.1983).
An insurer who asserts this special defense to avoid coverage has the burden of proving that there was a material misrepresentation and that it was made with the intent to deceive. Coleman v. Occidental Life Insurance Company of North Carolina, supra; Cousin v. Page, 372 So.2d 1231 (La.1979); Johnson v. Occidental Life Insurance Company of California, 368 So.2d 1032 (La.1979).
A statement is material if it is of such a nature that it would have caused the insurer not to contract or to contract at a higher premium rate. Jamshidi v. Shelter Mutual Insurance Company, supra.
In showing intent to deceive, strict proof of fraud is not necessary because of the inherent difficulties in proving intent. Intent to deceive must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations or from circumstances which create a reasonable assumption that the insured recognized the materiality. Coleman v. Occidental Life Insurance Company of North Carolina, supra; Cousin v. Page, supra; Johnson v. Occidental Life Insurance Company of California, supra.

DISCUSSION
In this case, Ms. Alexander, the agency representative who filled out the plaintiff's insurance application, testified that the defendant company would not issue insurance on any person who had traffic tickets within the preceding three years or who had a suspended driver's license. An official with the defendant company, Jim Crosby, testified by deposition that Shelter Mutual Insurance Company would not issue insurance for persons with recent traffic tickets or without valid driver's licenses. Therefore, it is clear that the information given by the plaintiff on her insurance form, that she had no tickets and that her license was not suspended, was false and also was material to the issue of whether Shelter would find her to be acceptable risk for insurance.
The remaining issue is whether the defendant carried its burden of proving that the plaintiff intentionally misrepresented the facts on her application for the insurance policy with the intent to deceive the company. The plaintiff first contends that she did not know that her driving record would have an effect on the amount of premiums she would have to pay, or that her record might entirely preclude the issuance of the policy. Therefore, she argues that there was no reason for her to intentionally misrepresent the status of her driving record. However, the evidence in this case demonstrates that the plaintiff was money conscious and trying to secure insurance at the lowest possible rate. She also testified of her awareness that people with traffic citations and violations on their driving record were required to pay more for insurance than persons with no violations. In addition, the plaintiff was specifically questioned about the status of her driving record on two occasions, once on the telephone and then again in person when the application was prepared.[1]
Plaintiff was not a novice at purchasing automobile insurance. Through a period of several years, the plaintiff had purchased automobile insurance on various vehicles with various insurance companies. In *836 Davis v. State Farm Mutual Automobile Insurance Company, 415 So.2d 501 (La. App. 1st Cir.1982), the court dealt with facts very similar to those presented here. In Davis, the plaintiff also contended that he had no intent to deceive the defendant insurance company when he omitted information regarding several traffic tickets and auto accidents from his application for insurance. The court found that it was hard to conceive that an automobile driver would not know that an accident free or traffic violation free driving record would save money on insurance. The court found that the plaintiff knew the contents of his traffic record and that of his spouse. The court stated that a person who had previously purchased automobile insurance would know or should have known of the importance of a driving record when applying for the insurance.
In the instant case, just as in Davis, supra, the evidence shows that plaintiff was aware of the effect of her driving record on an application for insurance. Therefore, the plaintiff's argument that there was no motive for her to misrepresent her driving record to the defendant is without merit.
Plaintiff next argues that she simply forgot about the two traffic tickets in 1985 and was unaware of her driver's license suspension. Although plaintiff may have been unaware of the administrative suspension of her driver's license, it is clear that plaintiff was aware of the speeding tickets. Plaintiff went to the court house and paid both traffic tickets. On one occasion she also went to the District Attorney's office to discuss one of the tickets.
The trial court obviously did not accept plaintiff's denial of knowledge or that she "forgot" the tickets. The trial court observed the plaintiff and heard extensive testimony concerning her previous traffic accidents, physical illnesses and surgeries which she experienced during several years prior to her application for this policy. The plaintiff had a good memory of these significant events in her life, yet she claimed not to remember important facts concerning her driving record. The trial court heard the plaintiff's testimony and also observed her demeanor. The trial court apparently did not find credible her testimony that she did not remember her traffic tickets.
The determination of credibility is a function allocated to the finder of fact at a trial because of its better capacity to evaluate a live witness compared with the appellate's court's access only to a cold record. Where review of the record shows that the trial court findings are not clearly in error, they are to be left undisturbed. Aleman v. Lionel F. Favret Company, Inc., 349 So.2d 262 (La.1977); Wattik v. Lewis Grocer Company, 476 So.2d 444 (La.App. 2d Cir. 1985); Cowley Corporation v. Shreveport Packing Company, 440 So.2d 1345 (La. App. 2d Cir.1983), writ denied 444 So.2d 122 (La.1984); Green v. Farmer's Insurance Company, 412 So.2d 1136 (La.App. 2d Cir.1982); Town of Homer v. Green, 513 So.2d 523 (La.App. 2d Cir.1987).
In the present case, in light of the trial court's credibility determination and the evidence presented at trial, it appears tht plaintiff had knowledge of her traffic tickets and the presence of these tickets and the effect they would have upon her insurance application. Therefore, the trial court correctly determined that her false representations and the presence of these tickets on her driving record was sufficient to make her ineligible for coverage with Shelter Mutual Insurance Company. See Davis v. State Farm Mutual Automobile Insurance Company, supra.

CONCLUSION
For the reasons outlined above, we affirm the trial court judgment in favor of the defendant, Shelter Mutual Insurance Company, voiding ab initio, the insurance policy in question.
AFFIRMED, AT APPELLANT'S COST.
NOTES
[1] The facts of this case are distinguishable from those in our recent case of Swain v. Life Insurance Company of Louisiana, 537 So.2d 1297 (La.App. 2d Cir.1989). In Swain, an applicant for credit life insurance was not asked any questions regarding his health and he was not asked to read the application to verify the information contained therein prior to signing. In the present case, the plaintiff furnished the information in the application and testified that she read the application before signing it.